Weil, Gotshal & Manges, New York City, for defendant; Robert Sugarman, New York City, of counsel.

**SAILOR MUSIC, Wow and Flutter Music, Quackenbush Music, Ltd., WB Music Corp., Jobette Music Co., Inc., Black Bull Music, Inc. and Gladys Music, Plaintiffs,**

v.

**THE GAP STORES, INC., Defendant.**

No. 79 Civ. 0059.

United States District Court, S. D. New York.

Feb. 3, 1981.

## MEMORANDUM DECISION

GAGLIARDI, District Judge.

Plaintiffs in this copyright infringement action are seven copyright owners and members of the American Society of Composers, Artists and Performers ("ASCAP"), seeking monetary damages and injunctive relief against defendant The Gap Stores, Inc. ("The Gap") for the transmission via stereo apparatus in Gap stores of plaintiffs' copyrighted compositions. This action arises under the federal copyright laws, 17 U.S.C. § 101 et seq. Pending before the court are the parties' cross-motions for summary judgment pursuant to Rule 56, Fed.R. Civ.P.

### Statement of Facts

The relevant facts may be briefly stated. The Gap is a well-known chain of approximately 420 clothing stores with 1979 revenues of nearly $300 million. It is The Gap's policy to transmit for the enjoyment of its customers radio programs by means of radio receivers connected to recessed loudspeakers arranged so that the music is audible throughout the stores. The allegedly infringing acts at issue here occurred on September 27, 1978, at two Gap stores located in New York City at 354 Sixth Ave-

nue and at 22 West 34th Street. Defendant does not deny that on that date radio programs featuring plaintiffs' copyrighted songs were played at those locations. In each of the stores the speakers are recessed behind wire grids in the store's ceiling and are connected to the receiver by built-in wiring. There are four speakers at the Sixth Avenue store and seven speakers at the 34th Street store. The size of the Sixth Avenue store is 2769 square feet; the size of the 34th Street store is 6770 square feet, with a selling area open to the public of 4,690 feet. The average size of all Gap stores is 3500 square feet.

## Discussion

17 U.S.C. § 106(4) grants copyright owners the exclusive rights publicly to perform, or authorize the performance of, their copyrighted works. 17 U.S.C. § 101 broadly defines "perform" to include the rendition or playing of a work "either directly or by means of any device or process." Pursuant to those provisions of the copyright laws, plaintiffs, through ASCAP, receive licensing fees from radio stations for the performance of their copyrighted works. ASCAP now claims that the further transmission or performance of its members' copyrighted works via radio receivers in The Gap's retail stores constitutes copyright infringement. The Gap argues that its use is protected by 17 U.S.C. § 110(5) which exempts from the coverage of Section 106(4) any

> communication of a transmission [e. g., a radio or television broadcast] embodying a performance or display of a work by the public reception of the transmission on a single receiving apparatus of a kind commonly used in private homes, unless—
>
> (A) a direct charge is made to see or hear the transmission; or
>
> (B) the transmission thus received is further transmitted to the public.

The issue in this lawsuit is whether defendant's allegedly infringing use of plaintiffs' copyrighted songs is exempted by section 110(5). To be exempted, The Gap must satisfy three requirements: (1) its apparatus must be "of a kind commonly used in private homes;" (2) no direct charge may be made to listen to the performances; and (3) the transmissions once received may not be "further transmitted to the public." Plaintiffs do not contend that The Gap directly charges its customers for listening to the performances; the court's inquiry therefore focuses on the first and third requirements. The reach of these provisions of section 110(5) has scarcely been tested in the courts. The legislative history, though, enables the court to ascertain what Congress intended by exempting performances via "commonly used" stereo equipment unless "further transmitted to the public."

Prior to the enactment in 1976 of the new copyright laws, the Supreme Court in *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 95 S.Ct. 2040, 45 L.Ed.2d 84 (1975), exempted under the 1909 copyright laws the owner of a fast-food store in Pittsburgh who kept a radio receiver with four speakers in the ceiling turned on throughout the business day. The size of the restaurant in the *Aiken* case was 1055 square feet, with a commercial area open to the public of 620 square feet. The House Committee sponsoring the 1976 Copyright Act expressly considered the *Aiken* decision, stating that the basis of the decision "is completely overturned by the present bill and its broad definition of 'perform' in section 101." H.Rep.No.94–1476, 94th Cong., 2d Sess., 87 (1976), U.S.Code Cong. & Admin.News 1976, p. 5659, 5701. The Committee proceeded to explain (and, due to its importance, this portion of the House Report is quoted at length):

> Under the particular fact situation in the *Aiken* case, assuming a small commercial establishment and the use of a home receiver with four ordinary loudspeakers grouped within a relatively narrow circumference from the set, it is intended that the performances would be exempt under clause (5). However, the Committee considers this fact situation to represent the outer limit of the exemption, and believes that the line should be

drawn at that point. Thus, the clause would exempt small commercial establishments whose proprietors merely bring onto their premises standard radio or television equipment and turn it on for their customers' enjoyment, but it would impose liability where the proprietor has a commercial "sound system" installed or converts a standard home receiving apparatus (by agumenting [sic] it with sophisticated or extensive amplification equipment) into the equivalent of a commercial sound system. Factors to consider in particular cases would include the size, physical arrangement, and noise level of the areas within the establishment where the transmissions are made audible or visible, and the extent to which the receiving apparatus is altered or augmented for the purpose of improving the aural or visual quality of the performance for individual members of the public using those areas. U.S.Code Cong. & Admin.News 1976, p. 5701.

Applying this standard to the instant case, it is clear that Congress did not intend to exempt establishments such as The Gap. First, The Gap stores, with an average size of 3500 square feet, are substantially larger than the public area of 620 square feet in the fast-food store at issue in *Aiken*. By virtue of the size of The Gap stores, the radio transmissions received on the radio receivers and played via the recessed loudspeakers are "further transmitted to the public." In addition, the stereo apparatus used by the specified Gap stores, including built-in wiring and four or seven loudspeakers recessed in ceiling cavities, may be considered to be "standard home receiving apparatus [converted] (by augmenting it with sophisticated or extensive amplification equipment) into the equivalent of a commercial sound system." H.Rep., *supra*, at 87, U.S.Code Cong. & Admin.News 1976, p. 5701. There is a factual dispute between the parties' experts as to whether or not the particular components used in these two Gap stores are actually "commonly used in private homes," and consequently the court cannot grant summary judgment on this basis. Nevertheless, the rather elaborate

sound system developed by The Gap, in conjunction with the size of the stores, places The Gap beyond the section 110(5) exemption.

This conclusion is further supported by the following statement in the Conference Report:

It is the intent of the conferees that a small commercial establishment of the type involved in *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, [95 S.Ct. 2040, 45 L.Ed.2d 84] (1975), which merely augmented a home-type receiver and which was not of sufficient size to justify, as a practical matter, a subscription to a commercial background music service, would be exempt.

H.Rep.No.94–1733, 94th Cong., 2d Sess., 75 (1976), U.S.Code Cong. & Admin.News 1976, p. 5816. It is clear on the basis of the uncontroverted affidavits of background music suppliers submitted by plaintiffs that The Gap is "of sufficient size to justify, as a practical matter, a subscription to a commercial background music service."

The court therefore concludes that The Gap is not the small commercial establishment whose reception and performance of radio transmissions via commonly used stereo equipment Congress intended in section 110(5) to exempt from the category of copyright infringing uses. Plaintiffs' motion for summary judgment is granted. Defendant's motion for summary judgment is denied.

Defendant's infringing use of plaintiff's copyrighted works is hereby enjoined. Submit judgment.

So Ordered.