**Bob MERRILL, d/b/a Golden Bell Songs, et al., Plaintiffs,**

v.

**BILL MILLER'S BAR–B–Q ENTERPRISES, INC. and Balous Miller, Defendants.**

**No. SA–87–CA–151.**

United States District Court, W.D. Texas, San Antonio Division.

May 13, 1988.

John Nelson and Bryan Collins, of Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., and Ross Charap and Karen Sherman, New York City, Office of the General Counsel of ASCAP, for plaintiffs.

Don McManus, San Antonio, Tex., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PRADO, District Judge.

Plaintiffs, Bob Merrill, d/b/a Golden Bell Songs, et al., brought this copyright infringement action against defendants, Bill Miller's Bar–B–Q Enterprises, Inc. ("Bill Miller's, Inc.") and Balous Miller, pursuant to the United States Copyright Act, 17 U.S. C. § 101 et seq. Plaintiffs alleged defendants infringed plaintiffs' thirteen copyrighted musical compositions by publicly performing the compositions at defendants' restaurants without authorization, by means of defendants' radio-over-speaker music equipment. A bench trial was held on April 25, 1988. On the basis of the pleadings, the Agreed Pretrial Order, the parties' Stipulations, and trial testimony and exhibits, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. Each plaintiff is the owner of a valid copyright in one or more of the following thirteen copyrighted musical compositions: "Honeycomb", "Sometimes A Lady", "Paper Roses", "You Decorated My Life", "Read My Lips", "Roll On Eighteen Wheeler", "Tulsa Time", "Can't Keep A Good Man Down", "Danny's Song", "Just Another Woman In Love", "Once In A Blue Moon", "There's No Way" and "Thank God For Kids".

2. Each of these original musical compositions is copyrightable subject matter under the United States Copyright Act.

3. Plaintiffs are members of the American Society of Composers, Authors and Publishers ("ASCAP"), to which they have

granted the nonexclusive right to license the nondramatic public performances of their copyrighted musical compositions.

4. Defendant Bill Miller's, Inc., at all material times, has owned, controlled, managed, operated and maintained a chain of "Bill Miller Bar–B–Q" restaurants in Texas, including the Bill Miller Bar–B–Q restaurant located at 1720 North New Braunfels, in San Antonio ("the San Antonio restaurant"); and the Bill Miller Bar–B–Q restaurant located at 709 East Ben White Boulevard, in Austin ("the Austin restaurant"). On the dates of the infringements alleged in the complaint, there were 36 Bill Miller Bar–B–Q restaurants. At present, there are 43 Bill Miller Bar–B–Q restaurants.

5. For approximately 15 years, defendant Balous Miller has been President, Chief Operating Officer and a 25 percent shareholder of Bill Miller's, Inc., with primary responsibility for the control, management and operation of Bill Miller's, Inc. and the restaurants.

6. From 1984 through 1986, the Bill Miller Bar–B–Q chain had annual gross revenues of approximately $30 million. In 1986, the San Antonio restaurant grossed over $900,000 and the Austin restaurant grossed over $700,000.

7. At all material times, each of the restaurants in the Bill Miller Bar–B–Q chain has had between 1000 and 1500 square feet of public dining area, and has seated between 100 and 125 people.

8. For many years, the corporate policy of Bill Miller's, Inc. has been to offer background music at each Bill Miller Bar–B–Q restaurant. Muzak, a commercial background music service, provided the background music service and equipment for use at the restaurants for more than ten years. In June 1985, defendants terminated their subscription to the Muzak service and had the Muzak equipment removed, with the exception of the Muzak ceiling speaker grilles and wiring hidden in the ceiling. They replaced the Muzak equipment with their own equipment, purchased from a retail electronics store engaged primarily in the sale of consumer electronics for the home.

9. The equipment defendants purchased for each of their (then 34) restaurants consisted of a homestyle Pioneer SX–212 AM/FM receiver and two, eight-inch, round J.W. Davis 712 speakers intended for ceiling installation. Each set of one receiver and two speakers cost defendants $118.00. The equipment defendants purchased for restaurants added to the chain after June 1985 was of comparable quality and cost.

10. Without exception, the receiver in each restaurant is located in a storeroom or storage closet inaccessible to the public. There are no speakers in the storerooms or storage closets.

11. In each restaurant, the radio broadcasts received by the receiver are sent by hidden wiring to the two speakers located in the dining area. The speakers are located approximately 40 feet from the receiver and are placed approximately 30 feet from each other. They are bolted atop speaker grilles recessed into ceiling tiles.

12. Music is audible throughout the dining areas of the restaurants.

13. While defendants were Muzak subscribers, beginning in at least July 1982, defendants publicly performed copyrighted musical compositions owned by ASCAP members at defendants' restaurants by means of retransmissions of radio broadcasts as well as by means of the Muzak background music service, through the Muzak equipment. Defendants did not have permission to do so from either the ASCAP members in interest or their representative, ASCAP.

14. Defendants received notice from ASCAP and Muzak that it was unlawful to perform publicly, without authorization, the copyrighted musical compositions in the ASCAP repertory by means of retransmissions of radio broadcasts. Although defendants acknowledged receiving these notices, these performances continued while defendants were Muzak subscribers and the Muzak equipment was in place.

15. Defendants continued such performances after they terminated the Muzak ser-

vice and purchased and installed their own radio-over-speaker equipment.

16. The ASCAP District Office file contains copies of letters and memoranda documenting telephone calls and personal visits to defendants or their representatives, offering defendants a license agreement for their radio-over-speaker uses and advising defendants of the consequences under the Copyright Act of their unlawful public performances.

17. Defendants refused to obtain a license for their radio-over-speakers music uses on the ground that they believed they were exempt from liability under 17 U.S.C. § 110(5). In forming this belief, they relied on articles received from the National Restaurant Association and the Texas Restaurant Association and advice of counsel.

18. The articles defendants received from the National Restaurant Association and the Texas Restaurant Association quoted from the Conference Report on the 1976 Copyright Act concerning 17 U.S.C. § 110(5) and made clear that Congress did not intend to exempt from liability commercial establishments which are "of sufficient size to justify, as a practical matter, a subscription to a commercial background music service."

19. On August 3, 1986, six of the plaintiffs' musical compositions were publicly performed without authorization at the San Antonio restaurant; and on August 13, 1986, seven of the plaintiffs' musical compositions were publicly performed without authorization at the Austin restaurant. The performances were all rendered by means of the radio-over-speaker equipment.

20. On the basis of defendants' long history of background music use, there is a substantial likelihood that they will continue to provide in their restaurants public performances of plaintiffs' and other ASCAP members' copyrighted musical compositions.

### Conclusions of Law

1. The Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1338.

2. Defendants infringed plaintiffs' copyrighted musical compositions which are the subject of this lawsuit by publicly performing these compositions without the permission of the plaintiffs or their representative, ASCAP.

■ 3. Defendants are jointly and severally liable for these infringing performances because defendant Balous Miller had both the right and ability to control the infringing performances provided at defendants' restaurants and a financial interest in the operation of the restaurant chain. *See, e.g., Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1161–62 (2d Cir.1971); *Sailor Music v. Mai Kai of Concord, Inc.,* 640 F.Supp. 629, 633 (D.N.H.1986); *Warner Bros.–Seven Arts, Inc. v. Kalantzakis,* 326 F.Supp. 80, 82 (S.D.Tex.1971).

■ 4. For three independent reasons, defendants' public performances of plaintiffs' copyrighted musical compositions are not exempt under 17 U.S.C. § 110(5).

5. First, pursuant to the plain language of the statute, defendants do not employ in their restaurants "a single receiving apparatus of a kind commonly used in private homes." The fact that individual components of the entire apparatus may be "home-type" does not make the entire apparatus "home-type". Rather, all the features of the complete apparatus must be considered in determining whether it is "home-type", including, for example, whether the wiring is hidden, the distance between the speakers, and the mounting of the speakers. Defendants' "receiving apparatus", a receiver connected by some 40 feet of hidden wiring to two, unfinished, round, eight-inch, ceiling-mounted speakers spaced some 30 feet apart, is not the type of radio receiving apparatus commonly found in the home. Rather, it is "commercial" in nature. *See Lamminations Music v. P & X Markets, Inc.,* 1985 Copyright Law Decisions ¶ 25,790, at 19,557 (N.D.Cal. 1985); *Rodgers v. Eighty Four Lumber Co.,* 617 F.Supp. 1021, 1023 (W.D.Pa.1985); *Sailor Music v. Gap Stores, Inc.,* 516 F.Supp. 923, 925 (S.D.N.Y.), *aff'd per curiam,* 668 F.2d 84 (2d Cir.1981), *cert. de-*

*nied,* 456 U.S. 945, 102 S.Ct. 2012, 72 L.Ed. 2d 468 (1982) (hereinafter *"Gap"*).

6. Second, the radio broadcasts received by defendants were "further transmitted" to the public because the broadcasts were initially received in a room or area without speakers and were sent to a separate room with speakers via some 40 feet of wiring. *See International Korwin Corp. v. Kowalczyk,* 665 F.Supp. 652, 657 (N.D.Ill.), *appeal docketed,* No. 87–2376 (7th Cir.1987); *P & X Markets, Inc.,* ¶ 25,790, at 19,556; *Gap,* 516 F.Supp. at 925. *Cf.* definition of "transmit," 17 U.S.C. § 101.

7. Third, defendants' chain operation is "of a sufficient size to justify, as a practical matter, a subscription to a commercial background music service." H.Con.Rep. No. 94–1733, 94th Cong., 2d Sess. 75, 1976 U.S.Code Cong. & Ad.News 5659, 5816. It is clearly "practical" for a chain of restaurants, each restaurant having 1000 to 1500 square feet of public dining area and grossing well over $500,000 annually, to subscribe to a commercial background music service. *See BMI v. U.S. Shoe,* 678 F.2d 816, 817 (9th Cir.1982); *Gap,* 516 F.Supp. at 925; *Eighty Four Lumber Company,* 617 F.Supp. at 1023. Defendants' prior subscription to a commercial background music service further establishes the inapplicability of the exemption to defendants' performances of copyrighted musical compositions. *Cf. P & X Markets, Inc.,* ¶ 25,790, at 19,556.

8. Given the "substantial likelihood of further infringements of the plaintiffs' copyrights", a permanent injunction shall issue prohibiting the defendants from publicly performing the musical compositions in suit without proper authorization. *Rare Blue Music v. Guttadauro,* 616 F.Supp. 1528 (D.Mass.1985).

9. Turning to the question of damages, defendants claimed that they had a good faith belief that their performances were exempt under 17 U.S.C. § 110(5). Section 504(c)(2) of the Copyright Act allows for a determination that an infringer is innocent if the "infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright". If defendants were "innocent" infringers, this Court would have the discretion pursuant to 17 U.S.C. § 504(c)(2) to reduce the minimum statutory damage award for each cause of action from $250 to $100.

10. However, in view of the physical and financial size of defendants' restaurant chain, their prior subscription to Muzak, and the well-developed case law interpreting the statute, defendants could not form a *reasonable,* good faith belief that their public performances of copyrighted music were exempt under 17 U.S.C. § 110(5). Accordingly, defendants are not "innocent" infringers under 17 U.S.C. § 504(c)(2). *See Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.,* 658 F.Supp. 458, 464 (E.D.Pa.1987); *Broadcast Music, Inc. v. Lyndon Lanes, Inc.,* 1985 Copyright Law Decisions ¶ 25,846, at 19,869 (W.D.Ky.1985) [available on WESTLAW, 1985 WL 5139].

11. Plaintiffs are entitled to statutory damages in the total amount of $22,000.00.