### HICKORY GROVE MUSIC, et al., Plaintiffs,

v.

### Andrew ANDREWS and Mary Ann Andrews, Defendants.

### No. CV 89–104–BLG–JFB.

United States District Court, D. Montana, Billings Division.

July 19, 1990.

On Motion for Reconsideration Sept. 13, 1990.

John H. Grant, Jackson Law Offices, Helena, Mont., for plaintiffs.

Robert P. Ryan, Billings, Mont., for defendants.

## MEMORANDUM AND ORDER

BATTIN, Senior District Judge.

Presently pending before the Court are cross-motions for summary judgment in this copyright infringement action. After reviewing the briefs and arguments of counsel, the depositions and affidavits on file, and the applicable statutory and case law, the Court grants plaintiff's Motion for Summary Judgment and denies defendant's Motion.

### Facts and Procedural Background

Both parties in this copyright infringement case have moved for summary judgment, indicating that they believe that no material facts are at issue that would preclude the Court from ruling on the merits of the claims as a matter of law. After review of the documents on file, the Court agrees with the parties and sets forth below the basic facts underlying this lawsuit.[1]

Plaintiffs own the copyrights to numerous musical compositions that they license through the American Society of Compos-

---

**1.** In their response briefs to the opposing motions for summary judgment, each party attempts to argue that disputed issues of fact exist that would preclude entry of summary judgment in favor of the other party. In essence, however, the only material dispute in this litigation concerns whether defendant's sound system qualifies as a "home-type" system operated in a small commercial establishment, thereby ex-

empting defendants from the strictures of the copyright law. *See* 17 U.S.C. § 110(5). The Court believes that the applicability of the "home-system defense" may be decided as a matter of law on the basis of the undisputed facts established in the affidavits on file, depositions, briefs, testimony, and arguments. *See* Rule 56(c), Fed.R.Civ.P.

ers, Authors, and Publishers (ASCAP). Defendants own and operate George Henry's restaurant as a sole proprietorship in downtown Billings, Montana. The restaurant serves breakfast, lunch and dinner, and is of the "sit-down" variety; it is not a fast-food establishment. Approximately eighty-five customers per day patronize George Henry's, and the seating capacity is 120 persons in a gross seating area of 1,192 square feet. *See* Affidavit of Andrew Andrews. Although facilities for dining exist both upstairs and downstairs at the restaurant, only the first floor dining area is at issue in this case. Defendants have refused to disclose any detailed financial information regarding the restaurant's revenues during the pre-trial discovery process.

When the defendants originally refurbished the interior of the restaurant, they installed recessed ceiling speakers and hidden wiring for a public address system. Later, defendants determined that they did not need a public address system, and instead, they "bought a used radio amplifier for use on the main floor level only." *See* Affidavit of Mary Ann Andrews. The sound system in use at George Henry's consists of an amplifier, tuner, audio cassette deck, and the speakers and wiring originally installed for the public address system. *See* Affidavits of Marlene Anderson & Dennis Nitschke. The receiving apparatus is located in the lobby of the restaurant. Five operative ceiling speakers are used on the first floor of the restaurant. *See* Affidavit of Marlene Anderson. The dining room speakers are located between thirty and forty-five feet from the receiving apparatus. *See* Affidavit of Dennis Nitschke.

The sound system was not professionally installed, and its design is not optimal for playing background music for customers. *See* Affidavits of Marlene Anderson & Dennis Nitschke. Nevertheless, music may be, and often is, transmitted throughout the first floor of the restaurant, both while the restaurant is open to the public and during the hours that it is closed. Because the sound system is often tuned to a local radio station during the hours that the public patronizes George Henry's, ASCAP con-

tacted defendants numerous times between 1985 and 1988 by letters, phone calls, and personal visits to facilitate licensing for the performance of copyrighted materials. *See, e.g.,* Deposition of Andrew Andrews, Exhibits 1–21; Affidavit of Terrance M. Sullivan. In the course of these contacts, ASCAP set forth the rudiments of copyright law, the licensing system that governs reproduction of musical compositions, and a proposed licensing agreement with annual fees ranging between $189.00 and $248.00.

Defendants refused to enter any licensing agreement with ASCAP, maintaining that their use of the sound system was merely personal and that their establishment was so small that they were exempt from the copyright infringement laws. AS-CAP sent two investigators to George Henry's on November 5, 1988. The investigators visited the restaurant both at lunch time and at dinner time, and they were seated in the first floor dining rooms. On both occasions, the sound system was tuned to a local radio station, and the songs that were played were distinctly audible. *See* Affidavits of Wallace Ridgeway & Mike Horner.

The investigators identified thirty-nine of forty-six musical compositions that were played during their visit to George Henry's. *See* Affidavit of Mike Horner; Supplemental Affidavit of Wallace Ridgeway. Plaintiffs claim ownership of, and ASCAP claims licensing rights to, six of those compositions. The alleged unauthorized performance of those six compositions forms the basis of this lawsuit. Plaintiffs sue for copyright infringement under Title 17 of the United States Code, and seek injunctive relief, statutory damages, and attorney fees and costs. *See* 17 U.S.C. §§ 502, 504–505.

Defendants do not deny that they may have broadcast the musical compositions at issue over their sound system on November 5, 1988. They claim instead that an exemption to the copyright infringement law shelters their establishment from liability. This exemption is known as the "home-system defense," and it applies to

transmissions of performances of musical compositions if the transmissions are made by means of a single receiving apparatus of the type commonly used in private homes. 17 U.S.C. § 110(5). Defendants maintain that their sound system is comparable to a home sound system which is exempt from the general copyright laws. Plaintiffs dispute defendants' contention and argue that the "home-system defense" does not apply to defendants' establishment.

### Discussion

As a preliminary matter, summary judgment is "available in a copyright infringement action where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Rodgers v. Eighty Four Lumber Company*, 617 F.Supp. 1021, 1022 (W.D.Pa.1985); *see also* Rule 56(c), Fed.R.Civ.P. In deciding a motion for summary judgment, a judge must weigh the evidence in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Inferences may be drawn only if they are reasonable in view of contextual facts or of an undisputed factual background. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.*, 809 F.2d 626, 631–32 (9th Cir.1987).

The burden is initially on the moving party to make out a prima facie case showing that no material facts exist to preclude summary judgment. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to set forth specific facts that refute the moving party's showing. *T.W. Electrical Service*, 809 F.2d at 630; *see also Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir.), *cert. denied*, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986). The Court's ultimate duty in deciding a motion for summary judgment is to determine whether the "specific facts" set forth by the non-moving party, coupled with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in the non-moving

party's favor based on that evidence. *T.W. Electrical Service*, 809 F.2d at 631.

In the instant case, plaintiffs initially move for summary judgment and attempt to make out a prima facie case for copyright infringement, injunctive relief, statutory damages, and attorney fees and costs. Defendants' motion for summary judgment, in turn, attempts to show as a matter of law that the "home-system defense" precludes a finding that plaintiffs' copyrights have been infringed. The Court will first consider plaintiffs' arguments on copyright infringement. Second, assuming that an infringement is found, the Court will consider the validity of the "home-system defense," and thereby determine the merits of defendants' motion for summary judgment. If this defense fails, the Court will address the issue of statutory damages and attorney fees and costs.

### A. Copyright Infringement

■ In order to make out a prima facie case of copyright infringement, the plaintiffs bear the burden of proving:

(1) the originality and authorship of the musical compositions;

(2) compliance with all the formalities of copyright registration under Title 17, United States Code;

(3) that the plaintiffs own the copyrights;

(4) that the compositions were performed publicly by the defendants; and

(5) that the defendants had not received permission from the plaintiffs to perform the compositions.

*Sailor Music v. Mai Kai of Concord, Inc.*, 640 F.Supp. 629, 632 (D.N.H.1986); *accord Broadcast Music, Inc. v. Hartmarx Corp.*, 1989 WESTLAW 121290, 1989 U.S.Dist. LEXIS 12104 (N.D.Ill.1989).

■ In support of the first three elements of their prima facie case, plaintiffs have submitted copies of their copyright registration certificates, indicating that ASCAP holds the legal licensing rights to the compositions at issue. Photocopies of copyright certification records have been accepted by other courts as prima facie proof of (1) originality and ownership of

the compositions, (2) compliance with formalities, and (3) ownership of the copyrights. *See Sailor Music*, 640 F.Supp. at 632 (citing *Blendingwell Music, Inc. v. Moor–Law, Inc.*, 612 F.Supp. 474, 480 (D.Del.1985)). Moreover, defendants do not dispute the first three elements of plaintiffs' prima facie case. Accordingly, the Court concludes that plaintiffs have proven ownership and control of the musical copyrights at issue.

■ Public performance of copyrighted material may be proven by uncontradicted affidavits of ASCAP investigators. *Sailor Music*, at 633. Plaintiffs have submitted the affidavits of two ASCAP investigators as proof that the disputed musical compositions were performed at George Henry's restaurant on November 5, 1988. *See* Affidavits of Wallace Ridgeway & Mike Horner. Defendants do not recall whether the compositions owned and controlled by plaintiffs were played at George Henry's restaurant on the date claimed. This failure to recall whether the musical compositions were performed does not raise *specific facts* sufficient to overcome plaintiffs' showing that the compositions were performed. *Hideout Records & Distributors v. El Jay Dee, Inc.*, 601 F.Supp. 1048, 1053 (D.Del.1984). Thus, the Court concludes that the six musical compositions at issue in this litigation were broadcast at the restaurant on the date in question.

■ In their response brief to plaintiff's motion for summary judgment, the defendants question whether playing music over a radio constitutes a "public performance" of a musical composition. To "perform a work" under copyright law means to "recite, render, play, dance, or act it, either directly of by means of any device or process...." 17 U.S.C. § 101. By playing music over a radio, defendants clearly "performed" the compositions "by means of [a] device" according to the plain language of this definition. To perform a work "publicly" means:

> (1) to perform ... it at a place open to the public or at any place where a substantial number of persons outside of a

normal circle of a family and its social acquaintances is gathered; or

> (2) to transmit or otherwise communicate a performance ... of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance ... receive it in the same place or in separate places and at the same time or at different times.

*Id.* Thus, because the defendants' "performance" took place in their restaurant when it was open to the public, the performance was a "public performance" for the purposes of copyright law. The Court therefore concludes that plaintiffs have carried their burden of showing that the defendants performed the protected works publicly.

Finally, both defendants admitted in their deposition testimony that they did not have permission to perform the compositions at issue in this lawsuit. *See* Deposition of Andrew Andrews, at 21; Deposition of Mary Ann Andrews, at 12–13. Thus, plaintiffs have proven the fifth element of their prima facie case of copyright infringement. In short, plaintiffs have met their burden of proving copyright infringement for the purposes of their summary judgment motion. Defendants have presented the Court with no specific facts that refute plaintiffs' showing of infringement. Therefore, unless defendants prevail in their motion for summary judgment, based on an affirmative defense provided by statute, the Court must grant plaintiffs' motion.

### B. The "Home–System" Defense

Although the plaintiffs have made out an unrebutted prima facie case of copyright infringement, the defendants contend that plaintiffs are not entitled to summary judgment. Defendants assert that they fall within the rubric of the "home-system defense" to the copyright law, and they contend that they are entitled to summary judgment on this ground.

The "home-system defense" is codified at 17 U.S.C. § 110(5), which states in relevant part:

[T]he following are not infringements of copyright:

. . . .

(5) communication of a transmission embodying a performance or display of a work by the public reception of the transmission on a single receiving apparatus of a kind commonly used in private homes, unless—

(A) a direct charge is made to see or hear the transmission; or

(B) the transmission thus received is further transmitted to the public.

Congress enacted this statute in direct response to the United States Supreme Court's decision in *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 95 S.Ct. 2040, 45 L.Ed.2d 84 (1975). In the *Aiken* case, the Supreme Court found no infringement of copyright when a small, "fastfood" restaurant broadcast musical performances that were overheard by the public during their short stays at the establishment. A year later, Congress passed the 1976 Copyrights Act to restrict the scope of the *Aiken* decision. The legislative history of this Act explains:

With respect to section 110(5), ... [i]t is the intent of the conferees that a small commercial establishment of the type involved in *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151 [95 S.Ct. 2040, 45 L.Ed.2d 84] (1975), which merely augmented a home-type receiver and which was not of sufficient size to justify, as a practical matter, a subscription to a commercial background music service, would be exempt. However, where the public communication was made by means of something other than a home-type receiving apparatus, or where the establishment actually makes a further transmission to the public, the exemption would not apply.

H.Conf.Rep. No. 94–1733, 94th Cong., 2d Sess. at 75, *reprinted in,* 1976 U.S.Code Cong. & Admin.News 5659, 5810, 5816.

█ Since enactment of the 1976 Copyrights Act, the courts have viewed the circumstances of *Aiken*—a small commercial establishment and the use of a home receiver with four ordinary loudspeakers grouped within a relatively narrow circumference—as "the outer limit" of the "home-system defense." *Broadcast Music, Inc. v. United States Shoe Corp.,* 678 F.2d 816, 817 (9th Cir.1982) (citing H.R.Rep. No. 94–1476, 94th Cong., 2d Sess. 86–87, *reprinted in,* 1976 U.S.Code Cong. & Admin.News at 5701); *Rodgers v. Eighty Four Lumber Company,* 617 F.Supp. 1021, 1023 (W.D.Pa. 1985) (citing the legislative history). The courts now require a showing of three basic elements before they will find a "home-system" exemption. First, the receiving apparatus must be of the kind commonly used in private homes. Second, the performances must not be "further transmitted" to the public. Third, the business must be a small commercial establishment. *International Korwin Corp. v. Kowalczyk,* 855 F.2d 375, 378 (7th Cir.1988). These three factors are analyzed below in the context of the instant case. Finally, the defendants carry the burden of proving that their restaurant falls within the framework of the § 110(5) exemption. *Broadcast Music, Inc. v. Hartmarx Corp.,* 1989 WESTLAW 121290, 1989 U.S.Dist. LEXIS 12104 (N.D.Ill.1989).

### 1. Type of Receiving Apparatus.

█ When determining whether a sound system qualifies as a "home-type" system, courts must examine the entire system and the context of its use, rather than focusing on individual components. Although individual components of a system may be commonly used in homes, the whole apparatus once installed may not qualify as a "home-type" system. *Merrill v. Bill Miller's Bar–B–Q Enterprises, Inc.,* 688 F.Supp. 1172, 1174 (W.D.Tex.1988).

Defendants argue that the system installed at George Henry's is far inferior to any commercial sound system that professionals would install at their restaurant. Affidavits in the record support this contention. *See* Affidavits of Marlene Anderson & Dennis Nitschke. Moreover, they point out that the receiver and tuner

at the restaurant are commonly used in homes in the area. Finally, they argue that recessed ceiling speakers and hidden wiring are not unusual in area homes.

Although the sound system at George Henry's was installed by an amateur and does not provide optimal sound, this Court and the case law both disagree with defendants' contention that it is a "home-type" system. Numerous courts have found that recessed ceiling speakers attached to a receiving apparatus by a substantial length of hidden wiring do not constitute "home-type" systems. *International Korwin Corp.*, 855 F.2d at 378 (recessed ceiling speakers and hidden wiring are not *commonly* found in homes); *Bill Miller's Bar-B-Q*, 688 F.Supp. at 1175 (ceiling speakers attached to receiving apparatus by 40 feet of concealed wiring is commercial in nature); *Gnossos Music v. DiPompo*, 1989 WESTLAW 154358, 1989 U.S.Dist. LEXIS 15988 (D.Maine 1989) (Magistrate's recommendation affirmed by District Court, Sept. 20, 1989) (portable stereo receiver connected to eight recessed ceiling speakers located in dining rooms and lobby are commercial in nature).

Furthermore, the sound system in the instant case differs markedly from the sound system in *Aiken*—the "outer limit" of § 110(5). In *Aiken*, the speakers were narrowly grouped around the receiving apparatus. In this case, the speakers are located up to forty-five feet away from the apparatus. In *Aiken*, the speakers were "ordinary" home stereo speakers. In this case, the speakers were originally installed to support a public address system. *See generally Gnossos Music*, 1989 WESTLAW 154358, 1989 U.S.Dist. 15988 (finding use of recessed ceiling speakers abandoned by subscription music service to be commercial). Thus, the Court finds that, although the sound system at George Henry's contains some components that are commonly found in area homes, the overall system is commercial in nature.

2. "Further Transmission" to the Public.

■ The copyright law defines "to transmit" as meaning "to communicate [a performance] by any device or process whereby images or sounds are received beyond the place from which they are sent." 17 U.S.C. § 101. In the context of § 110(5), the courts have interpreted "to further transmit" to mean any dispersal of sound from a point of reception through a restaurant or other establishment. *International Korwin Corp.*, 855 F.2d at 378; *see also Bill Miller's Bar-B-Q*, 688 F.Supp. at 1175 ("further transmission" occurs where radio broadcast is received in one location and sent to a separate area via concealed wiring). In this case, defendants admit they listen to the radio when they work in the dining rooms, even though the receiver was located in the lobby. Beyond dispute, defendants send radio broadcasts to locations apart from the receiving apparatus. Furthermore, even though the sound projection from the speakers is not optimal, it is audible to the public, and the music played is recognizable. *See* Affidavits of Wallace Ridgeway & Mike Horner. Thus, the Court concludes that defendants "further transmitted" radio broadcasts to the public.

3. Size of Establishment.

■ Whether a restaurant qualifies as a "small commercial establishment" may depend on three factors: the square footage of the business, the capacity of the restaurant, and the revenues of the business. In the instant case, defendants have failed to disclose the revenues of their establishment—a puzzling omission, given defendants' burden of proving they fall within the "home-system" exemption. *See Broadcast Music, Inc. v. Hartmarx Corp.*, 1989 WESTLAW 121290, 1989 U.S.Dist. LEXIS 12104 (N.D.Ill.1989). This information would be useful to the Court's inquiry because it would permit the Court to judge whether subscription to a background music service could be justified "as a practical matter." *See* H.Conf.Rep. No. 94–1733, 94th Cong.2d Sess. 75, *reprinted in*, 1976 U.S.Code Cong. & Admin.News 5810, 5816. Nevertheless, information regarding George Henry's revenues is not crucial to this Court's ruling on defendant's summary judgment motion.

■ In *Aiken*, the fast-food restaurant covered 1,055 square feet, but only 620 square feet was open to the public. *Rodgers v. Eighty Four Lumber Company*, 617 F.Supp. 1021, 1023 (W.D.Pa.1985). In the instant case, the gross seating area on the first floor of defendants' restaurant is 1,192 square feet—far exceeding *Aiken*'s "outer limit." Defendants maintain that the public area served by their sound system covers only 880 square feet and that this should serve as the basis on which to determine whether they qualify for the small business exemption. *See* Affidavit of Andrew Andrews. Yet, even this 880 square foot area exceeds the public area in *Aiken*. On this basis alone, defendants have failed to show their restaurant is a "small commercial establishment" as contemplated by the § 110(5) exemption. Furthermore, the first floor seating capacity of George Henry's is 120 persons. *Id.* Other courts have refused to find that restaurants with comparable seating capacity qualify as "small commercial establishments." *See Gnossos Music*, 1989 WESTLAW 154358, 1989 U.S.Dist. LEXIS 15988 (D.Maine 1989) (finding restaurant with seating capacity of 143 does not qualify for § 110(5) exemption).[2]

In short, defendants have failed to carry their burden of showing: (1) that the size, capacity, and revenues of their restaurant, justify a "small commercial establishment" classification, (2) that they did not "further transmit" the musical compositions to the public, and (3) that their sound system is a "home-type" system. As a result, this Court will deny defendants' Motion for Summary Judgment and, as previously discussed, will grant plaintiffs' Motion for Summary Judgment.

**C. Damages, Injunctive Relief, and Costs and Attorney Fees**

A plaintiff may elect either actual or statutory damages under 17 U.S.C. § 504. Plaintiffs in the instant case seek statutory damages. "Where statutory damages are elected, the trial court may, in its discretion, award between $250 and $10,000 for each act of infringement. 17 U.S.C. § 504(c)(1). If the court finds the infringement to have been wilful, the maximum award is increased to $50,000. 17 U.S.C. § 540(c)(2)." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir.1984). District courts have wide discretion in determining the amount of statutory damages to be awarded, "constrained only by the specified maxima and minima." *Id.;* see also *Sailor Music v. Mai Kai of Concord, Inc.*, 640 F.Supp. 629, 635 (D.N.H. 1986).

■ Plaintiffs urge the Court to find defendants' copyright infringement wilful in light of their correspondence, phone calls, and visits to defendants, advising them of the need to obtain a license to play musical compositions. Nevertheless, the Court is reluctant to find that defendants' infringement was wilful. A finding of 'wilfulness' in a copyright infringement case depends on a defendant's knowledge of her legal obligations. *International Korwin Corp.*, 855 F.2d at 379–80. Although ASCAP repeatedly informed defendants of the contours of copyright law, the evidence indicates that defendants maintained a good faith belief that they had a right to play their sound system for their

---

**2.** Defendants rely heavily on the *Springsteen v. Plaza Roller Dome, Inc.*, 602 F.Supp. 1113 (M.D. N.C.1985) to support their position that George Henry's qualifies as a small commercial establishment. In *Springsteen*, the district court found that the § 110(5) exemption applied to a 7,500 square foot miniature golf course which was serviced by 6 speakers. This Court finds that the decision in *Springsteen* is distinguishable from the instant case. First, the speakers at the miniature golf course were poor and required that patrons be in "close proximity" to have any chance of hearing any broadcast. In the instant case, music is audible to customers throughout most of the restaurant. Second, the miniature golf course produced only limited revenues—slightly over $4,000.00 per year. Defendants in this case have presented the Court with no figures with which to compare the size of George Henry's revenues. Finally, the court in *Springsteen* noted that at the time of its decision in 1985 only two published opinions had considered the scope of the § 110(5) exemption. As the citations in the text of this opinion indicate, decisions since 1985 tend to be much more conservative than the court's decision in *Springsteen*. *Springsteen* now stands as an exceptional case, not as the norm.

own use, even if their patrons overheard the music. *See* Deposition of Mary Ann Andrews, at 17, 28–29. Moreover, defendant Mary Ann Andrews at one time went to the public library on her own initiative to investigate her legal obligation to obtain a license, and she left convinced that they qualified as a small commercial establishment. *See* Affidavit of Mary Ann Andrews (indicating defendant's diligence, if not the accuracy of her legal conclusions, in going to the library to check on her legal obligations). Thus, the evidence does not support a finding that defendants wilfully disregarded their legal obligations.

Nevertheless, defendants who violate the copyright laws "must be put on notice that it costs less to obey the copyright laws than to violate them." *International Korwin Corp.*, 855 F.2d at 383 (citation omitted). ASCAP offered to license defendants' restaurant for between $189.00 and $248.00 per year. *See* Deposition of Andrew Andrews, Exhibits 6, 11. Thus, the total cost to defendants of obtaining a license during the period between ASCAP's first contact with defendants and the institution of this lawsuit (1985–88) would total no more than $744.00. Under these circumstances, the Court finds that damages in the amount of $250.00 per infringement, for a total damage award of $1,500.00, are appropriate.

Plaintiffs also request injunctive relief, pursuant to 17 U.S.C. § 502. An injunction is properly imposed when there is a substantial likelihood of further infringement of plaintiff's copyrights. *Sailor Music*, 640 F.Supp. at 634 (and cases cited therein). The Court has not been informed that defendants have removed their sound system, or that they have obtained a license to perform musical works since the filing of this lawsuit. Therefore, the Court finds a substantial likelihood exists that plaintiffs may infringe on plaintiffs' copyrights in the future if an injunction is not granted. Thus, plaintiffs' request for an injunction shall be granted. The injunction shall be permanent, or "until such time as defendant[s] obtain a license" to perform plaintiffs'

copyrighted material. *International Korwin Corp. v. Kowalczyk*, 665 F.Supp. 652, 658 (N.D.Ill.1987), *affirmed*, 855 F.2d 375 (7th Cir.1988).

Finally, plaintiffs move the Court for attorney fees and costs associated with prosecution of this action. *See* 17 U.S.C. § 505. To justify an award of attorney fees and costs under 17 U.S.C. § 505 in the Ninth Circuit, there must be a showing of "bad faith or frivolity." *Cooling Systems and Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485, 493 (9th Cir.1985) (citing *Jartech v. Clancy*, 666 F.2d 403, 407 (9th Cir.), *cert. denied*, 459 U.S. 879, 103 S.Ct. 175, 74 L.Ed.2d 143 (1982)); *see also Olson v. National Broadcasting Corp.*, 855 F.2d 1446, 1454 (9th Cir.1988). As discussed above, there is no evidence that defendants infringed on plaintiffs' copyrights in bad faith; they believed they had a right to listen to music while they were working in their restaurant. Moreover, Mary Ann Andrews' visit to the local library to research her legal obligations indicates that she did not treat ASCAP's claims against her with frivolity. Accordingly, plaintiffs' request for attorney fees and costs shall be denied.

For the foregoing reasons,

IT IS ORDERED that plaintiffs' Motion for Summary Judgment be and hereby is granted and defendants' Motion for Summary Judgment be and hereby is denied.

IT IS FURTHER ORDERED that defendants are permanently enjoined from performing any copyrighted material owned by plaintiffs, or until such time as they are licensed to perform such works.

IT IS FURTHER ORDERED that plaintiffs are entitled to statutory damages under 17 U.S.C. § 504 in the amount of $1,500.00. Plaintiffs' request for attorney fees and costs is denied.

The Clerk is directed to enter judgment accordingly.

The Clerk is directed forthwith to notify counsel for the respective parties of the making of this order.

## ON MOTIONS FOR RECONSIDERATION

Both parties move to amend this Court's Memorandum, Opinion and Judgment of July 19, 1990, which granted summary judgment in favor of plaintiffs and denied summary judgment for defendants. Defendants seek reconsideration of the Court's entire judgment; plaintiffs seek only reconsideration of the Court's denial of attorney fees.[1] The Court heard oral argument on these motions on September 11, 1990. In open court, this Court denied defendants' motion to amend and granted plaintiffs' motion. The reasons for this ruling are detailed below.

In moving to amend, defendants argue that the Court apparently neglected to consider several affidavits that they contend raise disputed issues of fact precluding summary judgment. The Court can assure defendants that these affidavits were considered. First, the finding that the restaurant is not a small commercial establishment was made as a matter of law, based on defendants' admissions with respect to the square footage of the restaurant and the seating capacity. The case law is quite specific as to size of commercial establishments that are exempt under copyright law. The Court's prior decision is in accordance with this case law. Douglas Wilson's affidavit, in which he offers his opinion that George Henry's restaurant is a "small commercial establishment," is therefore irrelevant.

Second, whether a sound system is commercial in nature depends on its use, not whether the components are more typically found in the home than in a restaurant. While Marlene Anderson may not have chosen to install the type of system found at George Henry's, as revealed in his affidavit, the sound system was used to "further transmit" copyrighted material; it was used commercially. Finally, for the purposes of summary judgment, the generalized affidavits of regular patrons of the George Henry's Restaurant submitted by defendants do not suffice to overcome the specific, sworn affidavits of the ASCAP investigators who heard the broadcast of copyrighted material in George Henry's at lunch time and dinner time on November 5, 1988.

The Court took all these factors into account in its prior Order. Furthermore, the Court's judgment is in accordance with the 1976 Copyright Act clarifying the extent of the "home system defense." Defense counsel's reliance at oral argument on the *Aiken* case is therefore misplaced. Where a party does not raise new arguments in a Rule 59(e) motion to amend, the motion is properly denied. *Backlund v. Barnhart,* 778 F.2d 1386, 1388 (9th Cir. 1985). Defendants' Motion to Amend is therefore denied.

Turning to plaintiffs' motion, the Court finds that it did indeed apply an inappropriate legal standard when ruling on plaintiffs' entitlement to attorney fees. As plaintiffs point out, in a copyright infringement case in which plaintiffs prevail, there need not be a showing of "bad faith and frivolity" to justify an award of attorney fees. In fact, attorney fees generally are awarded to prevailing plaintiffs to deter copyright infringement and to make plaintiffs whole. *McCulloch v. Albert E. Price, Inc.,* 823 F.2d 316, 323 (9th Cir.1987).

This is not always the case, however. The decision whether or not to award attorney fees is left by statute to the sound discretion of the trial court. *See* 17 U.S.C. § 505. Factors the Court may consider include:

1. the complexity of the case;

2. whether the defendant was an innocent, rather than willful or knowing, infringer; and

3. the defendants' good faith attempts to avoid infringement.

*Id.*

Plaintiff's Motion to Amend the judgment shall be granted insofar as the Court

---

1. Although neither party identifies the foundation for its motion to amend, the Court concludes that both motions are submitted pursuant to Rule 59(e), F.R.Civ.P. *See Northern Chey-* *enne Tribe v. Hodel,* 851 F.2d 1152, 1155 (9th Cir.1988) (motions to amend summary judgment opinion properly brought under this rule).

applied the incorrect legal standard in its prior order. Nevertheless, in light of the factors just mentioned, the Court will refrain from awarding attorney fees. As noted in its prior ruling, defendants did make a good faith attempt to investigate their legal obligations under the copyright laws and believed that they qualified as an exempt small commercial establishment. Moreover, the Court believes that the previously imposed injunction and fine of $1,500.00 adequately serve the goals of deterrence and punishment.

IT IS SO ORDERED.

The Clerk is directed forthwith to notify counsel for the respective parties of the making of this order.