Walter K. HINTON, Executor,

v.

MAINLANDS OF TAMARAC.

No. 83–6497–CIV–NCR.

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

May 21, 1985.

Robert Asti, Miami, Fla., for plaintiff.

Stuart L. Stein, Fort Lauderdale, Fla., for defendant.

ROETTGER, District Judge.

This infringement of copyright case presents the first reported decision[1] dealing with the applicability of 17 U.S.Code § 101 and copyright royalties to a condominium association holding a dance on its premises for the benefit of its members.

Plaintiff represents the royalty holders of several copyrighted musical compositions and plaintiff is the registered owner of seven copyrighted songs which plaintiff asserts were infringed by a performance at defendant's clubhouse on November 7, 1981. The record reveals that several letters had been sent in the preceding years by ASCAP (American Society of Composers, Authors and Publishers) to defendant, advising them that ASCAP felt that defendant was in violation of the copyright law and that some correspondence between the parties ensued. Defendant, hereinafter referred to as Condominium, asserted it was not in violation because it contended this was for the benefit of the residents and cited a decision by the Florida State Public Service Commission that condominium residents were entitled to residential rates rather than commercial rates from public utilities such as Florida Power and Light. ASCAP rejected contention and insisted that Condominium was in violation.

A veteran professional musician and his wife, also a veteran professional musician, attended the dance at the clubhouse at the Mainlands of Tamarac on November 7, 1981. The deposition of the defendant's president reveals that there are no security gates or entrances to pass through so the public can drive directly to defendant's clubhouse without the visitor's receiving clearance for admittance from a gatekeeper, security guard, or watchman. Neither of plaintiff's witnesses at the performance were residents or guests of residents of the Mainlands of Tamarac. There was no sign at the door excluding non-resident owners or persons who were not guests of such owners. There was a charge of $3.00 each for admittance, although defendant contended that it was not an admission fee but a suggested contribution. Seven songs on which Plaintiff indisputably held copyrights were performed on the night of November 7, 1981.

The question arises: whether under these circumstances 17 U.S. Code § 101 provides an exception for condominium owners from the strictures of a copyright law. Plaintiff contends the performance was a paid, musical performance by an orchestra and that the condominium association's clubhouse use is like that of a lodge or club which is subject to the copyright laws, as amended in 1976. The House Reports on the 1976 emphasize that, "contrary to the decision in *Metro-Goldwin-Mayer Distributing Corp. v. Wyatt*, 21 C.O.Bull. 203 (D.Md.1932), performances in 'semipublic' places such as clubs, lodges ... are 'public performances' subject to copyright control." H.Rep. No. 94–1476, 94th Cong., 2d Sess. 64, reprinted in (1976) U.S.Code Cong. & Ad.News 5659, 5677. See also, S.Rep. No. 94–473, 94th Cong. 1st Sess. 60 (1975).

Defendant contends that the condominium clubhouse is merely an extension of the residents' living rooms and, therefore, falls within the statutory exception because each owner has a fee simple interest in the common areas such as the clubhouse.

**1.** Neither counsel could locate any case dealing with the question and neither could the Court.

The statute was amended in 1976 and now reads as follows:

"To perform or display a work 'publicly' means—

(1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered; or

(2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times."

Plaintiff contends that the statute was amended and specifically is limited to "a family ..." which means one single family. Defendant contends that the Congress explicitly provided a section for a family such as the holding of a wedding reception in the bride's home. Defendant further asserts that the amount paid at the door was only a voluntary donation and the amount is merely suggested.

The court does not have trouble accepting Defendant's contention that the clubhouse in a condominium association is an "extension of the owner's living room" or, more appropriately in this court's estimation, is like a parlor of yesteryear which happens to be held in common ownership by the condominium members, but available from time to time for individual use by any one of the member-owners.

The court can take judicial notice that the clubhouse seems to be ubiquitous with condominiums in South Florida, unless there are a small number of residential units in the condominium. Defendant's condominium comprises 225 owner-residents.[2] However, the court does not have to decide in this case whether a social function of the entire condominium or a major unit of it, is entitled to be treated as an extension of one owner's living room, or several owners' living rooms.

The court has considerably more trouble with defendant's contention that this "donation" was not an admission price and, further, that this was not a public performance at which admission was charged. There was not the slightest impediment to the public in attending the dance and the musical performance inherent at the dance—other than the payment of $3.00, defendant's assertion that it was only a suggested and voluntary donation is untenable under these circumstances. "Donations" are often merely euphemisms for ticket prices, apparently in an effort to defeat admission taxes or sales taxes in many areas—or simply to avoid the paperwork involved. Although it does not appear to be another version of the old custom of passing the hat to pay the fiddler, that question also is a matter the court does not have to decide because the money exacted by the condominium from plaintiff's witnesses in this case was purely and simply the price of admission.

Therefore, under these particular circumstances, the court holds that this was a public performance, open to the general public, apparently held on a fairly regular basis and not one within the "family exception" of § 101. The fact that the 1976 amendment deleted the "for profit" requirement of the statute supports plaintiff's contention, not defendant's.

Summary Judgment will be entered for plaintiff, however, damages will be limited to the statutory minimum of $250.00 for each infraction, plus an attorneys fee to be awarded to plaintiff by separate order.

---

2. Apparently by the year 2000, the percentage of persons in South Florida who reside in condo- miniums will be startlingly high so this matter is a question of considerable public interest.