FERMATA INTERNATIONAL MELO-DIES, INC., Shapiro, Bernstein & Co., Inc., WB Music Corp. and Famous Music Corporation, Plaintiffs,

v.

CHAMPIONS GOLF CLUB, INC., and Jack Burke, Jr., Defendants.

Civ. A. No. H–88–0187.

United States District Court, S.D. Texas, Houston Division.

May 29, 1989.

John B. Nelson, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., Mark W. Brooks, Young, Bacon & Brooks, Houston, Tex., for plaintiffs.

Tom Alexander and David Sachs, Houston, Tex., for defendants.

### ORDER

HITTNER, District Judge.

Pending before this Court are Champions and Jack Burke's Motion for Summary Judgment (Document # 18), Plaintiffs' Cross–Motion for Summary Judgment (Document # 23), and Plaintiffs' Motion for Leave to Supplement Plaintiffs' Cross–Motion for Summary Judgment (Document # 25).

Plaintiffs, owners of certain copyrights, filed this copyright infringement action against Defendants Champions Golf Club, Inc., and Jack Burke, Jr., the corporate Defendant's president and principal stockholder. Plaintiffs in this action are members of the American Society of Composers, Authors and Publishers (ASCAP) to which Plaintiffs have granted the nonexclusive right to license nondramatic performances of their copyrighted musical compositions. Plaintiffs allege that Defendants allowed the unauthorized public performance of Plaintiffs' copyrighted songs in a restaurant of the Champions Golf Club in Houston, Texas, on the night of September 6, 1986.

First, this Court will address Plaintiffs' Motion for Leave to Supplement Plaintiffs' Cross–Motion for Summary Judgment. This motion shall be granted and this Court shall consider the original affidavit (Document # 26) in support of Plaintiffs' motion for summary judgment.

Second, this Court will discuss the summary judgment motions. Both Plaintiffs and Defendants have filed motions for summary judgment. Having considered the cross motions for summary judgment, the Court makes the following conclusions:

### COPYRIGHT INFRINGEMENT

This is a suit for copyright infringement under Title 17 of the United States Code. 17 U.S.C. §§ 101–914 (1982 & Supp.1985). Therefore, jurisdiction of this Court is based upon Title 28, United States Code, Section 1338(a). 28 U.S.C. § 1338(a) (1982).

██ In an action for copyright infringement, the elements of Plaintiffs' proof are as follows:

(1) the originality and authorship of the compositions involved;

(2) compliance with all formalities required to secure a copyright under Title 17, United States Code;

(3) that Plaintiffs are the proprietors of the copyrights of the compositions involved in this action;

(4) that the compositions were performed publicly for profit [by the defendants][1]; and

(5) that the defendants had not received permission from any of the plaintiffs or their representatives for such performance.

*Van Halen Music v. Palmer,* 626 F.Supp. 1163, 1165 (W.D.Ark.1986) (quoting *Boz Skaggs Music v. KND Corp.,* 491 F.Supp. 908, 912 (D.Conn.1980)).

"A *prima facie* case as to the first three elements may be made by submitting certified copies of copyright registration certificates and any subsequent assignments." *Van Halen,* 626 F.Supp. at 1165. Copyright registration certificates constitute prima facie evidence of the facts stated therein, 17 U.S.C. § 410(c) (1982), and are proof of plaintiffs' ownership of valid copyrights in the compositions in suit. *Tennessee Fabricating Co. v. Moultrie Mfg. Co.,* 421 F.2d 279, 282 (5th Cir.), *cert. denied,* 398

---

1. The "for profit" limitation of the Copyright Act of 1909 was removed when Congress enacted the current statute in 1976. *LaSalle Music Publishers, Inc. v. Highfill,* 622 F.Supp. 168, 169 (W.D.Mo.1985).

U.S. 928, 90 S.Ct. 1819, 26 L.Ed.2d 91 (1970).

The Court notes that the Defendants do not dispute whether the Plaintiffs are the owners of valid copyrights in the musical compositions in question. Plaintiffs, however, submitted certified copies of the registration certificates and any subsequent assignments to the songs in question. The Plaintiffs have provided sufficient evidence to establish compliance with the formalities of Title 17. Additionally, Defendants do not dispute that the musical compositions in question were performed or that Defendants did not receive permission from Plaintiffs or their representatives for the performance. Therefore, the issue before this Court as to Plaintiffs' claim of copyright infringement is whether the performances were "public."

The issue of whether the compositions were performed "publicly" is a question of law for this Court to decide. *See, e.g., Columbia Pictures Indus., Inc. v. Aveco, Inc.,* 800 F.2d 59, 62–63 (3d Cir.1986) (court found "public" performance on cross motions for summary judgment); *Ackee Music, Inc. v. Williams,* 650 F.Supp. 653, 655–56 (D.Kan.1986) (court found "public" performance on plaintiffs' motion for summary judgment); *Hinton v. Mainlands of Tamarac,* 611 F.Supp. 494, 495 (D.C.Fla.1985) (court found "public" performance on plaintiffs' motion for summary judgment).

The Copyright Act defines the term "publicly" as follows:

> (1) to perform or display [a copyrighted work] at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered.

17 U.S.C. § 101 (1982). The scope of the definition of "publicly" is discussed in the legislative history of the 1975 amendments to the Copyright Act.

> Under clause (1) of the definition of "publicly" in section 101, a performance or display is "public" if it takes place "at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and

its social acquaintances is gathered." One of the principal purposes of the definition was to make clear that, contrary to the decision in *Metro–Goldwyn–Mayer Distributing Corp. v. Wyatt,* 21 C.O. Bull. 203 (D.Md.1932), performances in "semipublic" places such as clubs, lodges, factories, summer camps, and schools are "public performances" subject to copyright control. The term "a family" in this context would include an individual living alone, so that a gathering confined to the individual's social acquaintances would normally be regarded as private. Routine meetings of businesses and governmental personnel would be excluded because they do not represent the gathering of a "substantial number of persons."

*Ackee Music,* 650 F.Supp. at 655 (quoting H.R.Rep. No. 1476, 94th Cong., 2d Sess. 64, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5677–78).

■ In order for this Court to find a copyright infringement violation, the performance of the copyrighted musical compositions at Defendants' establishment, Champions Golf Club, must come within the Copyright Act's definition of public performance. 17 U.S.C. § 101. The parties to this action do not dispute that Champions Golf Club is a private club in the golfing business. That fact, however, does not withdraw Champions Golf Club from the statutory definition of "public." The legislative history is clear that a performance in a semipublic place, such as a club, constitutes a "public" performance. Additionally, twenty-one members plus guests were present in the dining room of the club on the night of September 6, 1986, which is the night of the "performance" in question (*see* Document # 23, attachment # 2, Burke Exhibit # 2). The Court considers twenty-one members plus guests to be a "substantial number of persons outside of a normal circle of a family." This Court finds that the performance in question was a "public performance." Therefore, this Court concludes that Plaintiffs have established that Defendants infringed Plaintiffs' copyrights.

## AFFIRMATIVE DEFENSES

In Defendants' Answer, Defendants affirmatively pleaded "laches, estoppel, waiver and bad faith on the part of Plaintiffs" (Document # 3, p. 2). Defendants' assertion of these defenses is based on the alleged failure of Plaintiffs or their agent ASCAP to respond to a written request made in August, 1985, for "a list of ASCAP's members' music" (*see* Document # 27, p. 2 and Exhibit D). Defendants further assert that "over two years after Champions [Golf Club] requested a list of ASCAP's members' songs, ASCAP sent undercover agents to spy on Champions' private golf facility" (*see* Document # 27, p. 2). This Court will address these two assertions separately.

■ The defense, "that ASCAP refused to provide Defendants a complete list of the music it licensed, is without merit." *Billy Steinberg Music v. Cagney's Pub, Inc.*, 1988 Copyright L. Dec. (CCH) ¶ 26,268 (N.D.Ill.1988); *see also Cass County Music Co. v. Vineyard County Golf Corp.*, 605 F.Supp. 1536, 1537 (D.Mass.1985) ("[P]laintiffs [sic] failure to supply a complete list of all copyrighted compositions is of no legal consequence."). A copyright owner's obligation is merely to respond to a written request asking whether specific compositions are in the owner's collection. *Famous Music Corp. v. Bay State Harness Ass'n*, 554 F.2d 1213, 1215 (1st Cir.1977).

■ This Court has considered the following facts in evaluating Defendants' affirmative defense: Mr. Tom Alexander, defense counsel, wrote a letter dated August 8, 1985, to Mr. Kenneth F. Clausen of ASCAP seeking "a list of [ASCAP's] members' music" (Document # 27, Exhibit D). Mr. Clausen responded to Mr. Alexander in a letter dated August 20, 1985, which stated:

> Please be advised that a complete list of songs in the Society's repertory is maintained at the Society's New York office. There are hundreds of thousands of compositions written and published by more than 40,000 members of ASCAP. Our representatives carry an ASCAP Index of Performed Works, which is avail-

able for you or your client's examination or purchase.

> If you would like to purchase this list of songs (with the Supplement), please forward to this office a check in the amount of $30.00, and we will then order the Index from our New York office.

> For your information, enclosed is a brochure printed by ASCAP, and a list of the composers, authors and publishers whom we represent.

(Document # 27, Exhibit E.) The brochure which Mr. Clausen enclosed explained the ASCAP license process (Reply Affidavit in Support of Plaintiffs' Cross-Motion for Summary Judgment, Exhibit A).

This Court finds that Plaintiffs, through their agent ASCAP, fulfilled any obligation to respond to Defendants' written request. Therefore, this Court holds that Defendants' estoppel/waiver defense is without merit.

■ This Court construes Defendants' second affirmative defense as laches and bad faith due to the two years or more that ASCAP sought voluntary compliance with the copyright laws (*see* Document # 27, p. 4–5). Defendants' burden is to produce evidence "that plaintiffs' conduct was unreasonable or that [defendants have] suffered prejudice as a result of plaintiffs' unreasonable delay in bringing an action." *Blendingwell Music, Inc. v. Moor–Law, Inc.*, 612 F.Supp. 474, 483 (D.C.Del.1985). Defendants have produced no evidence to show that Plaintiffs' actions in seeking voluntary compliance were unreasonable. Therefore, the Court finds that Defendants' assertion of the laches and bad faith defense is without merit.

## JOINT AND SEVERAL LIABILITY

An additional issue before this Court is whether the Defendants are jointly liable for the infringing performances. Plaintiffs contend that the corporate and individual Defendants are jointly and severally liable for the acts of infringement on which this action is based. Defendants seem to assert that only the corporate Defendant should be liable.

■ Cases have held that all participants in copyright infringement are jointly and severally liable as tortfeasors. *Screen Gems–Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552, 554 (2d Cir. 1972); *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971). A corporate officer may be held vicariously liable (1) if the officer has a financial stake in the activity and (2) if the officer has the ability and right to supervise the activity causing infringement. *Van Halen Music*, 626 F.Supp. at 1166–67; *Warner Bros., Inc. v. Lobster Pot, Inc.*, 582 F.Supp. 478, 482 (N.D.Ohio 1984).

■ First, the Court will discuss the direct financial interest that Defendant Jack Burke, Jr. ("Burke"), the corporate officer in this case, has in the infringing activity. The Court notes that Defendants admit that the corporate Defendant has for the past thirty years, and still does, own and operate the Champions Golf Club (Document # 3, p. 1, ¶ 4; *see also* Document # 1, p. 2, § 4). Defendant Burke is one of the founders of the Champions Golf Club, Inc. ("Champions, Inc.") (Deposition of Burke, pp. 7–8; *see* Document # 23, Attachment # 2). Burke has been the president and a director for thirty years and is the majority shareholder of Champions, Inc. (Burke Dep., pp. 7–8, 10). Burke receives a salary from the corporation (Burke Dep., p. 19). The evidence is clear that both Defendants have a direct financial interest in Champions Golf Club.

Second, the Court will consider Burke's ability and right to supervise the activity which caused the infringement. Defendant Burke directs the operations of the club and is listed on the club's Texas Alcoholic Beverage Commission license as the "person responsible" (Burke Dep., pp. 20–22, and Exhibit 1). He is responsible for the hiring and firing of the various heads of departments at the club, including the manager in charge of food and beverages (Burke Dep., pp. 22–23). Burke is in charge of the day-to-day operations of the club and has final approval of all decisions involving the club (Burke Dep., pp. 24–26).

If the members of the club did not like the music being played in the club's restaurant, Burke would ensure that the music was changed (Burke Dep., pp. 24–25). Burke was the person contacted by ASCAP and Burke decided that the contacts would be ignored (Burke Dep., pp. 29–35 and Exhibits 3–5). Accordingly, the Court holds that Burke had the right and ability to control the infringing activities. Thus, the Court finds that the individual Defendant and the corporate Defendant will be jointly and severally liable for the copyright violation.

DAMAGES

Plaintiffs herein are seeking injunctive relief, statutory damages, and costs including reasonable attorney's fees.

Injunctive relief is addressed in section 502(a) of Title 17, United States Code, which provides that:

[a]ny court having jurisdiction of a civil action arising under this title may ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

17 U.S.C. § 502(a) (1982). Courts have traditionally granted permanent injunctions, if liability is established and a continuing threat to the copyright exists. *National Football League v. McBee & Bruno's, Inc.*, 792 F.2d 726, 732–33 (8th Cir.1986) (citing *Pacific & Southern Co., Inc. v. Duncan*, 744 F.2d 1490, 1499 (11th Cir.1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1867, 85 L.Ed.2d 161 (1985)). "The general rule in alleged copyright infringement cases is that, for a preliminary injunction motion, irreparable injury is presumed once the movant has established a case of copyright infringement." *Northwestern Bell Tel. Co. v. Bedco of Minn., Inc.*, 501 F.Supp. 299, 303 (D.Minn.1980) (citing *Metro–Goldwyn–Mayer v. Showcase Atlanta Co-op Productions*, 479 F.Supp. 351, 362 (N.D. Ga.1979); *New York Times Co. v. Roxbury Data Interface, Inc.*, 434 F.Supp. 217, 220 (D.N.J.1977); *Uneeda Doll Co., Inc. v. Regent Baby Products*, 355 F.Supp. 438, 445 (E.D.N.Y.1972)).

■ The evidence demonstrates that the Defendants have been aware of the neces-

sity of obtaining permission to publicly perform copyrighted music since 1985. Despite numerous warnings of the consequences of Defendants' failure to obtain permission for performing copyrighted music in the ASCAP repertory, Defendants continued to do so. Plaintiffs are, therefore, entitled to an injunction prohibiting Defendants from performing Plaintiffs' copyrighted songs without proper authorization.

Statutory damages are governed by Section 504(c) of Title 17, United States Code, which provides in pertinent part:

(c) Statutory Damages.—

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $250 or more than $10,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $50,000....

17 U.S.C. § 504(c) (1982).

In interpreting section 504(c) and its predecessor, section 101(b) of the Copyright Law of 1909, courts have held that, in the absence of proof of actual damages, the statute invests the trial court with wide discretion to set damages within the statutory limits. *International Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 383 (7th Cir. 1988); *see also Morley Music Co. v. Dick Stacey's Plaza Motel, Inc.*, 725 F.2d 1, 3 (1st Cir.1983) (stating that the determination of statutory damages is committed, within limits, to the court).

In *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952), the Court held that merely awarding plaintiffs damages equal to lost profits would not be a sufficient deterrent. Thus, the latitude granted under section 101(b) gives the district court the ability to formulate a damage award that will achieve the deterrent purposes served by the statutory damages provision. The Supreme Court said:

The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy.

*Id.* at 233, 73 S.Ct. at 225.

Where a plaintiff has proved the infringement of a copyright on the part of a defendant, and no proof of actual damages is offered, the court should award at least minimum damages of $250 for each infringement. *Jewell–LaSalle Realty Co. v. Buck*, 283 U.S. 202, 207, 51 S.Ct. 407, 409, 75 L.Ed. 978 (1931). Courts now routinely award statutory damages in excess of $250 per infringement in cases like this one. *See, e.g., Nick–O–Val Music Co., Inc. v. P.O.S. Radio, Inc.*, 656 F.Supp. 826, 828–29 (M.D.Fla.1987) ($2,500 per infringement); *International Korwin Corp. v. Kowalczyk*, 665 F.Supp. 652, 658–59 (N.D.Ill.1987) ($1,500 per infringement), *aff'd*, 855 F.2d 375 (7th Cir.1988); *Rodgers v. Eighty Four Lumber Co.*, 623 F.Supp. 889, 892 (W.D.Pa. 1985) ($2,500 per infringement). In Judge Weber's Findings and Conclusions in *Rodgers*, he explained the reasons for awarding substantial statutory damages:

The courts have applied many standards as a guideline in the imposition of statutory damages. Running through them as a common thread is the principle that defendant should not reap a benefit from its violation of the copyright laws, that statutory damages should exceed the un-

paid license fees "so that defendant will be put on notice that it costs less to obey the copyright laws than to violate them." *Music City Music v. Alfa Foods, Ltd.*, 616 F.Supp. 1001, 1003 (E.D.Va.1985). Furthermore, they serve the strong public interest in insuring integrity of copyright laws. (*ibid*, p. 1004) [sic].

*Rodgers*, 623 F.Supp. at 892.

The courts in Texas now also typically award statutory damages substantially in excess of $250 per infringement. *See, e.g., Golden Torch Music v. Lichelle's, Inc.*, 2 U.S.P.Q.2d 1795, 1797–98, 1987 WL 14543 (W.D.Tex.) ($1,250 per infringement), *aff'd*, 831 F.2d 1060 (5th Cir.1987); *Rare Blue Music v. Cismek Corp.*, 1986 Copyright L.Dec. (CCH) ¶ 25,966, 1986 WL 517 (S.D. Tex.1986) ($3,000 per infringement).

As in the cases cited, Plaintiffs are offering no proof of actual damages from the copyright infringements. Instead, Plaintiffs rely upon the Clausen Affidavit (Document # 23, Attachment # 4) which shows the following: (1) Defendants were given repeated notice of their infringing activities prior to the commencement of this litigation; (2) Defendants have consistently refused to obtain an ASCAP license and pay license fees at the applicable rate, opting instead to remain unlicensed and to continue their unauthorized public performances of ASCAP's members' music for over four years; and (3) if Defendants had been properly licensed by ASCAP for the period through December 31, 1988, they would owe approximately $2,400 in license fees.

Mr. Burke's admission that he was contacted repeatedly by ASCAP representatives but still refused to obtain an ASCAP license also justifies an award of substantial statutory damages (Burke Dep., pp. 31–32). *See International Korwin*, 665 F.Supp. at 659 (considering defendant's willful refusal after numerous contacts by ASCAP when imposing $1,500 per infringement); *Merrill v. County Stores, Inc.*, 669 F.Supp. 1164, 1172 (D.N.H.1987) (considering ASCAP's numerous contacts with defendant when imposing $750 per infringement). Therefore, this Court concludes that statutory damages of $2,000 per in-fringement, for a total of $8,000, is warranted here. To award less would not deter the Defendants from continuing to violate the copyright laws.

Costs and attorney's fees are discussed in Section 505 of Title 17, United States Code which states that:

> [i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505 (1982). A panel of the Fifth Circuit Court of Appeals concluded in a copyright infringement case that "[a]lthough attorney's fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely." *Micromanipulator Co., Inc. v. Bough*, 779 F.2d 255, 259 (5th Cir.1985) (citing *Engel v. Teleprompter Corp.*, 732 F.2d 1238, 1241 (5th Cir.1984)); *see also Warner Bros., Inc.*, 582 F.Supp. at 484 (holding that attorney's fees of $6,393.75 should be routinely awarded to the prevailing party); *International Korwin*, 665 F.Supp. at 659–60 (holding that attorney's fees of $21,502.75 should be awarded).

Based on the preceding cases, this Court will grant reasonable costs and attorney's fees upon submission of affidavits setting forth Plaintiffs' costs and attorney's fees. The Court notes that these attorney's fees are similar to costs and collateral to the claims at issue in this case. A lack of determination as to the collateral issue of attorneys fees does not preclude the issuance of a final, appealable judgment on the merits. *White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 453 n. 14, 102 S.Ct. 1162, 1167 n. 14, 71 L.Ed.2d 325 (1982), *cited with approval in Holmes v. J. Ray McDermott & Co., Inc.*, 682 F.2d 1143, 1146 (5th Cir.1982), *cert. denied*, 459 U.S. 1107 (1983), *appeal after remand*, 734 F.2d 1110 (5th Cir.1984). It is therefore

ORDERED that Champions and Jack Burke's Motion for Summary Judgment be, and is hereby, DENIED. It is further

ORDERED that Plaintiffs' Cross–Motion for Summary Judgment be, and is hereby, GRANTED. Additionally, it is

ORDERED that Plaintiffs' Motion for Leave to Supplement Plaintiffs' Cross–Motion for Summary Judgment be, and is hereby, GRANTED.