**U.S. SONGS, INC., Brockman Music, Rate Music, Street Talk Tunes, E.M.I. April Music, Inc. and Colgems–E.M.I. Music, Inc., Plaintiffs,**

v.

**DOWNSIDE LENOX, INC. and Peter M. Peck, Defendants.**

**No. 1:90–CV–1330–RHH.**

United States District Court, N.D. Georgia, Atlanta Division.

May 16, 1991.

Joyce B. Klemmer, Atlanta, Ga., for plaintiffs.

Michael W. Broadbear, Atlanta, Ga., for defendants.

### ORDER

ROBERT H. HALL, Jr., District Judge.

This is a case alleging copyright infringement under Title 17, United States Code. Jurisdiction is vested with this Court pursuant to 28 U.S.C. § 1338(a). The case is before the Court on Plaintiffs' Motion for Summary Judgment. The Court GRANTS Plaintiffs' Motion.

### BACKGROUND

Plaintiffs are songwriters and music publishers who are the owners of valid copyrights in the five musical compositions at issue in this lawsuit: "(They Long to Be) Close to You," "Hello," "Keep on Loving You," "Foolish Heart," and "It's Too Late." As such, Plaintiffs are all members of the American Society of Composers, Authors and Publishers ("ASCAP"), an unincorporated membership association of more than 45,000 writers and publishers of musical compositions. ASCAP operates as a performing rights licensing organization. Accordingly, each Plaintiff has granted to ASCAP a nonexclusive license to authorize the nondramatic public performance of that Plaintiff's copyrighted musical compositions.

Defendant Downside Lenox, Inc. is a Georgia corporation which owns, manages and operates a place of business for public entertainment and refreshment known as the Bucket Shop, located at 3475 Lenox Road, Atlanta, Georgia. Defendant Peter M. Peck is, and was at all relevant times, employed by Downside Lenox as Chief Executive Officer, his primary responsibility being the control, management, operation and maintenance of the corporation. Defendants regularly transmit musical compositions by a radio-over-loudspeakers system for the benefit of customers of the Bucket Shop.

The public area of the Bucket Shop consists of separate bar and dining areas, and in 1985 included one area in which live music was performed, and another in which a "radio-over-loudspeakers" system was used.[1] Accordingly, Defendants at that time entered into a licensing agreement with ASCAP authorizing Defendants to publicly perform at the Bucket Shop any or all of the copyrighted musical compositions in the ASCAP repertory, which, according to Plaintiffs, number some "hundreds of thousands" of compositions. Complaint, p. 3. In return for the license, Defendants agreed to pay appropriate annual license fees to ASCAP, as determined by ASCAP in light of the types of music provided by Defendants.

Subsequent to Defendants' and ASCAP's execution of the licensing agreement, Defendants decided not to continue providing live music, but rather to retain only the radio-over-loudspeakers system. Thereafter, Defendants claimed that the license fees sought by ASCAP were too high, and refused to pay their license fees due under the agreement. Following repeated notices, ASCAP on February 15, 1989 terminated the licensing agreement for default. Thereafter, ASCAP made repeated offers to reinstate Defendants' license in exchange for Defendants' payment to ASCAP of the license fees owed, but Defendants did not respond. ASCAP also repeatedly warned Defendants of their potential liability under the copyright law, to no avail.

On June 19, 1990, Plaintiffs commenced this lawsuit, alleging in their Complaint that Defendants infringed their copyrights on February 10, 1990 by publicly performing the compositions in question without the approval of either ASCAP or the individual owners of the copyrights. Specifically, Plaintiffs allege that Defendants, using their radio-over-loudspeakers system, retransmitted without permission a radio

---

1. Briefly, the particular radio-over-loudspeakers system used by Defendants consists of approximately 20 ceiling-mounted speakers attached to a radio receiver which is located behind the bar. Upon receipt of the radio broadcast at the bar, that broadcast is transmitted, via the ceiling-mounted speakers, throughout the bar and restaurant areas of the Bucket Shop.

broadcast containing the five songs which are the subject of this lawsuit. Altogether, Plaintiffs thus allege five distinct incidents of infringement, giving rise to five causes of action. Plaintiffs in their Complaint seek an injunction pursuant to 17 U.S.C. § 502 restraining Defendants from publicly performing the musical compositions in question; statutory damages as provided for in 17 U.S.C. § 504 in the amount of $1,500.00 per infringement, for a total of $7,500.00.; and costs of the action, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505. Currently, Plaintiffs have moved for summary judgment.

## DISCUSSION

### I. *Standard of Review for Summary Judgment*

This Court will grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must demonstrate that the nonmoving party lacks evidence to support an essential element of her or his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986), *cert. denied*, 484 U.S. 1066 (1988). The movant's burden is "discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* Once the movant has met this burden, the opposing party must present evidence establishing a material issue of fact. *Id.* The nonmoving party must go "beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

All evidence and factual inferences should be viewed in the light most favorable to the nonmoving party. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). An issue is not genuine if it is unsupported by evidence or is created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of every element essential to his or her case so as to create a *genuine* issue for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53; *Rollins*, 833 F.2d at 1528.

### II. *Application*

In moving for summary judgment, Plaintiffs contend that the undisputed facts establish, first, that Defendants infringed Plaintiffs' copyrights, and second, that none of Defendants' claimed affirmative defenses apply to the present situation. As a result, Plaintiffs contend that they are entitled to judgment as a matter of law.

#### A. *Evaluation of Facts*

In support of their Motion for Summary Judgment, Plaintiffs contend that the undisputed facts establish that: (1) Plaintiffs are the owners of valid copyrights in the compositions in question; (2) on the night of February 10, 1990, Defendants, using a radio-over-loudspeakers system, retransmitted to their patrons a radio broadcast including those copyrighted compositions; and (3) Defendants were at the time unauthorized to retransmit Plaintiffs' copyrighted works.

In support of their version of the facts, Plaintiffs present the affidavits of two investigators establishing that Defendants, using a radio-over-loudspeakers system, broadcast the five musical compositions in question at the Bucket Shop on the date in question. Plaintiffs also present as evidence the affidavit of Mr. Gary Hartman, the Division Manager for ASCAP, and

Manager for ASCAP's Atlanta District Office. In his affidavit, Mr. Hartman establishes both the facts that Plaintiffs are members of ASCAP, and that Defendants lacked permission to perform the compositions at issue.

In response, Defendants fail to go "beyond the pleadings" and present any evidence whatsoever indicating the existence of a material issue of disputed fact with regard to the events of February 10, 1990. First, Defendants do not dispute Plaintiffs' ownership of valid copyrights in the compositions in question. Furthermore, Defendants admit that "[t]here is little doubt that these songs were played" at the Bucket Shop on the night in question. Defendants' Objection to Plaintiffs' Motion for Summary Judgment, p. 1. Finally, Defendants fail to present any evidence that they in fact were at the time authorized to retransmit the copyrighted works. Rather than disputing Plaintiffs' asserted facts, Defendants merely contest Plaintiffs' argument that the retransmission of songs via a radio-over-loudspeakers system constitutes an unauthorized "public performance" of the songs so as to violate the copyright statute.

The Court thus finds that there is no material issue of disputed fact regarding the events of February 10, 1990, and accepts Plaintiffs' version of those facts as undisputed. As a result, the only remaining questions before this Court involve the proper application of the law to these undisputed facts.

### B. *Application of Law*

#### (1) Copyright Infringement

■ In an action for copyright infringement, a plaintiff must prove the following elements:

(1) the originality and authorship of the compositions involved;

(2) compliance with all formalities required to secure a copyright under Title 17, United States Code;

(3) that Plaintiffs are the proprietors of the copyrights of the compositions involved in this action;

(4) that the compositions were performed publicly [by the defendants];[2] and

(5) that the defendants had not received permission from any of the plaintiffs or their representatives for such performance.

*Fermata Int'l Melodies v. Champions Golf Club,* 712 F.Supp. 1257, 1259 (S.D.Tex.1989) (citing *Van Halen Music v. Palmer,* 626 F.Supp. 1163, 1165 (W.D.Ark. 1986)). In addition, it must be shown that none of the defendant's claimed affirmative defenses apply. *See Fermata,* 712 F.Supp. at 1261.

In their Objection to Plaintiffs' Motion for Summary Judgment, Defendants do not dispute the originality of the works, the validity of Plaintiffs' copyrights in those works, Plaintiffs' resulting proprietary interests in the compositions, the fact that Defendants retransmitted the works on the night of February 10, 1990, or Defendants' lack of permission to publicly perform the songs.

Thus, the sole issue remaining for decision is whether the admitted retransmission of a radio broadcast including copyrighted compositions constitutes a "public performance" of the compositions so as to establish an infringement of copyright. "The issue of whether the compositions were performed 'publicly' is a question of law for this Court to decide." *Fermata,* 712 F.Supp. at 1260. In order for this Court to find a copyright infringement violation, the performance of the copyrighted musical compositions must come within the Copyright Act's definition of "public performance." 17 U.S.C. § 101 (1982) provides:

To perform or display a work "publicly" means—

---

**2.** In such cases, the plaintiff is no longer required to plead or prove that the defendant's performance was "for profit." *See LaSalle Music Publishers, Inc. v. Highfill,* 622 F.Supp. 168, 169 (W.D.Mo.1985) (discussing the 1976 Amendment to the Copyright Act replacing § 106's previous requirement of proof of "for profit" use with a "not for profit" exemption found in § 110(4)).

(1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered; or

(2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

Section 101 further provides:

To "transmit" a performance or display is to communicate it by any device or process whereby images or sounds are received beyond the place from which they are sent.

Faced with virtually identical facts, other courts have consistently held that playing music by means of a radio-over-loudspeakers system in a restaurant which is open to the public constitutes a public performance within the purview of the Copyright Law. A recent case on point is *Hickory Grove Music v. Andrews*, 749 F.Supp. 1031, 1037 (D.Mont.1990). There, as here, the issue was "whether playing music over a radio constitutes a 'public performance' of a musical composition." *Id.* at 1036. The court in *Hickory Grove* held that it did, citing the language of 17 U.S.C. § 101 and finding that by employing a radio-over-loudspeakers system similar to Defendants' system here, the defendants in that case played music by means of a device, and thus infringed the plaintiffs' copyrights. The same result was reached in *Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 377 (7th Cir.1988), where the court determined that the retransmission of a radio broadcast throughout the defendant's restaurant constituted a "public performance" for the purposes of applying the copyright law. This Court thus finds that in this case, Defendants' retransmission of the subject songs using their radio-over-loudspeakers system constituted a "public performance" within the purview of the Copyright Act. As a result, the Court finds that Plaintiffs have satisfied all of the requirements for a showing of copyright infringement as enumerated in *Fermata*.

(2) Affirmative Defenses

In moving for summary judgment, Plaintiffs further assert that the undisputed facts establish the factual and legal insufficiency of Defendants' claimed affirmative defenses. As an aside, it is noteworthy to the Court that in their Answer to Plaintiff's Complaint, Defendants assert several affirmative defenses, all of which Plaintiffs in their Motion for Summary Judgment allege to be insufficient. Nevertheless, in responding to Plaintiffs' Motion for Summary Judgment, Defendants, rather than reasserting any of the affirmative defenses previously raised, assert three additional defenses never before discussed. For the sake of clarity and thoroughness, however, the Court will consider individually all of the defenses raised at various times by Defendants. The first four numbered discussions below concern defenses raised in Defendants' Answer; the remaining three concern defenses raised in Defendants' Objection to Plaintiffs' Motion for Summary Judgment.

(i) Defense of ASCAP's Failure to Renegotiate Its Licensing Agreement with Defendants

■ Defendants' First, Second, and Fifth affirmative defenses as presented in their Answer are based upon their contentions that the licensing fees sought by ASCAP were too high and that ASCAP refused to renegotiate its previous agreement with Defendants. However, Defendants present no evidence in support of this contention. To the contrary, Plaintiffs present evidence that in fact it was ASCAP *itself* which continually sought to relicense Defendants, and that ASCAP at all times sought from Defendants licensing fees which not only were reasonable and standard in light of the type of music provided at the Bucket Shop, but also were altered to reflect Defendants' discontinuance of the live music portion of the Bucket Shop's entertainment. *See* Hartman affidavit, attached as Exhibit A to Plaintiffs' Motion

for Summary Judgment, pp. 4–6, ¶¶ 8–10. Nevertheless, *even if* Defendants had produced evidence in support of their argument, disputes over the reasonableness of a licensing fee do not constitute valid defenses to a copyright infringement suit. *See Wow and Flutter Music, Inc. v. Gato Gordo Enterprises*, 1984 Copyright L.Dec. (CCH) ¶ 25,725 (S.D.Ill.1984) ("a dispute as to reasonableness of a license fee does not justify infringing on a valid copyright.").

### (ii) "Recording License" Defense

■ Defendants present as their Third affirmative defense a "recording license" defense. This defense is based upon Defendants' contention that since the radio station conducting the original broadcast must in the first instance pay Plaintiffs for the privilege of airing the songs, the Copyright Act did not intend for the party receiving and retransmitting the radio station's broadcast—here, Defendants—to pay for that right as well. The Court does not agree with Defendants. Rather, the Copyright Act envisions the granting of different *types* of rights in copyrighted works, with each type of right being distinguishable from the others. *See Chappell & Co., Inc. v. Middletown Farmers Market*, 334 F.2d 303, 305 (3rd Cir.1964) ("[t]he surrender of one monopoly (the right to make mechanical reproductions) does not carry with it the right to publicly perform the copyrighted musical composition ...").

### (iii) "No Profit" Defense

■ Defendants' Fourth affirmative defense is a "no profit" defense, and is based upon Defendants' contention that they do not directly profit from the performances in question. 17 U.S.C. § 110(4) provides:

[T]he following are not infringements of copyright:

... (4) performance of a nondramatic literary or musical work otherwise than in a transmission to the public, without any purpose of direct or indirect commercial advantage and without payment of any fee or other compensation for the performance to any

of its performers, promoters, or organizers ...

The Court disagrees with Defendants with regard to the applicability of this defense for two reasons. First, it is clear that Defendants' use of the protected works in this case involves a "transmission to the public." Second, regardless of whether the alleged infringer actually profited *from the performance itself*, "a profit-making enterprise which publicly performs copyrighted musical compositions is deemed to do so for profit." *Gnossos Music v. DiPompo*, 13 U.S.P.Q.2d 1539, 1540, 1989 WESTLAW 154358, 1989 U.S.Dist. LEXIS 15988 (D.Me. 1989) (Magistrate's recommendation affirmed by District Court, September 20, 1989). Furthermore, an enterprise such as the Bucket Shop is considered to be a profit-making enterprise even if it never actually makes a profit. *Bourne Co. v. Speeks*, 670 F.Supp. 777, 779 (E.D.Tenn.1987).

### (iv) Defense of Lack of Jurisdiction

■ As a Sixth affirmative defense, Defendants claim that "[t]his is a case based upon contract and should be resolved in the State Courts and not the Federal Courts." Answer, p. 3. However, the Court finds little discussion necessary with regard to the disposition of this defense. First, this case may not be characterized as one "based upon contract." Rather, it is the *absence* of a contract between ASCAP and Defendants which gave rise to the lawsuit in the first place. Second, 28 U.S.C. § 1338(a) states that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to ... copyrights ..." It is thus clear that in cases such as this, where the plaintiff alleges copyright infringement pursuant to the Copyright Act, this Court has jurisdiction.

### (v) "Home–System" Defense

■ Although Defendants are unclear with regard to whether they claim exemption under the "home-system" defense provided by 17 U.S.C. § 110(5), Plaintiffs apparently are under the impression that Defendants have in fact raised that defense. *See* Motion for Summary Judgment, p. 13

n. 4 ("Defendant[s] hint at a barely colorable claim of an exemption under Section 110(5) of the Copyright Act. . . ."). For the sake of thoroughness, the Court will address that defense as if clearly raised.

17 U.S.C. § 110(5) provides:

[T]he following are not infringements of copyright:

... (5) communication of a transmission embodying a performance or display of a work by the public reception of the transmission on a single receiving apparatus of a kind commonly used in private homes, unless—

(A) a direct charge is made to see or hear the transmission; or

(B) the transmission thus received is further transmitted to the public

The Court agrees with Plaintiffs that Defendants' claim of exemption under § 110(5) in the present situation is contrary to well-established law. In evaluating such situations,

[t]he courts now require a showing of three basic elements before they will find a "home-system" exemption. First, the receiving apparatus must be of the kind commonly used in private homes. Second, the performances must not be "further transmitted" to the public. Third, the business must be a small commercial establishment.

*Hickory Grove*, 749 F.Supp. at 1037. *See also, Int'l Korwin*, 855 F.2d at 378.

With regard to the question of whether Defendants' receiving apparatus is "of the kind commonly used in private homes", numerous courts have found that sound systems virtually identical to that used by Defendants in this case do not qualify as "home-type" systems. *See Hickory Grove*, 749 F.Supp. at 1037 (restaurant sound system consisting of recessed ceiling speakers, to which transmissions were made from a radio amplifier, tuner, and audio cassette deck, was not a "home-type" system); *Int'l Korwin*, 855 F.2d at 378 (recessed ceiling speakers and hidden wiring are not *commonly* found in homes); *Merrill v. Bill Miller's Bar–B–Q Enterprises, Inc.*, 688 F.Supp. 1172, 1175 (W.D.Tex.1988) (In finding that ceiling speakers attached to receiving apparatus by 40 feet of concealed wiring is commercial in nature, the court stated, "The fact that individual components of the entire apparatus may be 'home-type' does not make the entire apparatus 'home-type.' "); *Gnossos Music*, cited *supra*, 13 U.S.P.Q.2d 1539 (portable stereo receiver connected to eight recessed ceiling speakers located in dining rooms and lobby are commercial in nature).

With regard to whether Defendants in this case "further transmitted" the subject songs to the public, the Court finds that clearly they did. Again, the copyright law defines "to transmit" as meaning "to communicate [a performance] by any device or process whereby images or sounds are received beyond the place from which they are sent." 17 U.S.C. § 101. "In the context of § 110(5), the courts have interpreted 'to further transmit' to mean any dispersal of sound through a restaurant or other establishment." *Hickory Grove*, 749 F.Supp. at 1038 (citing *Int'l Korwin*, 855 F.2d at 378; *Bill Miller's*, 688 F.Supp. at 1175).

Due to Defendants' failure to qualify for exemption under either of the above requirements, it is not necessary for the Court to determine whether Defendant's establishment qualifies as a "small commercial establishment." Case law clearly indicates that the sound system used by Defendants does not qualify as a "home-type" system. Furthermore, the case law clearly indicates that Defendant's sound system was indeed used to "further transmit" the performances in question to the public. As a result, it is clear that Defendants' use of the copyrighted material in question does not satisfy the requirements for the "home-system" exemption provided by § 110(5).

### (vi) "Fair Use" Defense

■ Defendants in their Objection further claim the defense of the doctrine of "fair use." Nevertheless, Defendants fail to explain the applicability of this defense to these facts, and the Court in fact finds that the doctrine does not apply to the present situation.

17 U.S.C. § 107 is the section of the Copyright Law dealing with "fair use." That section provides:

> Notwithstanding the provisions of section 106, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.

The "fair use" doctrine was created to allow "some limited and useful forms of copying and distribution that are tolerated as exceptions to copyright protection." *Pacific and Southern Co., Inc. v. Duncan*, 744 F.2d 1490, 1494 (11th Cir.1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1867, 85 L.Ed.2d 161 (1985). However, Defendants in this case have completely failed to demonstrate how their use of the songs, by broadcasting them throughout a public bar and restaurant area, falls within any of the above "fair use" situations. Indeed, the Court cannot imagine how, by any stretch of the imagination, Defendants' situation may be characterized as "fair use" as that use is narrowly defined in § 107.

Moreover, among the factors to be considered in determining whether a performance falls within the narrow "fair use" exemption are whether the use "is of a commercial nature or is for nonprofit educational purposes", and "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(1), (3). As Plaintiffs accurately point out, these factors warrant a finding that the "fair use" defense does not apply in the present case. First, the performances in question were made at a bar and restaurant, clearly a commercial venture. Second, the songs were played in their entirety, not portions thereof. *See, e.g., Bourne Co. v. Speeks*, 670 F.Supp. at 780 ("Generally, the fair use doctrine does not apply where copyrighted material is used as a whole.").

**(vii) Defense of Lack of Intent to Infringe**

■ As a final defense, Defendants in their Objection assert, again without any supporting evidence whatsoever, that they "had no intent to violate the law...." Defendants' Brief in Opposition, pp. 2–3. Nevertheless, the law is clear that lack of intent to infringe does not shield the infringer from liability. *See Id.* at 780 ("It is not essential to a recovery of the statutory damages that the giving of an infringing performance shall be a willful violation of the copyright.").

Moreover, *even if* lack of intent were a valid defense to copyright infringement, Plaintiffs in this case present in the affidavit of Gary Hartman evidence that in fact ASCAP continually warned Defendants of their potential liability under the copyright law, and attempted to persuade Defendants to reinstate their previous licensing agreement with ASCAP through the payment of licensing fees due. Furthermore, the very fact, undisputed in this case, that Defendants once had a licensing agreement with ASCAP demonstrates their knowledge that such an agreement was required under the copyright law. In response, Defendants have failed to go "beyond the pleadings" and demonstrate the existence of a "material issue of fact" with regard to whether Defendants intended to violate the copyright law. In the face of evidence presented by Plaintiffs, Defendants' bald assertion that they did not intend to violate the copyright law is insufficient to escape summary judgment.

Thus, the Court finds that in moving for summary judgment, Plaintiffs have satisfied their burden of pointing out to the Court the absence of any issues of material fact. Furthermore, based upon those undisputed facts, the Court concludes that Defendants violated the Copyright Act, and furthermore that Defendants are not entitled to claim any exemptions or defenses from the Copyright Act's terms. In response, Defendant has not satisfied its burden, but rather has failed to go "beyond the pleadings" and establish the existence of a "material issue of fact" with regard to any of these issues. Thus, the Court finds

that Plaintiffs are entitled to judgment as a matter of law.

### (3) Remedy

#### (i) Injunctive Relief

■ Plaintiffs request injunctive relief pursuant to 17 U.S.C. § 502(a). "An injunction is properly imposed when there is a substantial likelihood of further infringement of plaintiff's copyrights." *Hickory Grove*, 749 F.Supp. at 1040 (citing *Sailor Music v. Mai Kai of Concord, Inc.*, 640 F.Supp. 629, 634 (D.N.H.1986)). *See also, Pacific and Southern Co.*, 744 F.2d at 1499 (Past infringement and substantial likelihood of future infringements normally entitle copyright holder to a permanent injunction.). As was the case in *Hickory Grove*, where such an injunction was granted, this Court has not been informed that Defendants have removed their radio-over-loudspeakers sound system, or that they have obtained a license to perform the musical works in question since the filing of this lawsuit. In light of Plaintiffs' evidence that Defendants intentionally infringed the copyrights at issue, as is evidenced by ASCAP's repeated warnings prior to Defendants' infringement, the Court finds in this case a substantial likelihood that Defendants will continue to infringe Plaintiffs' copyrights if an injunction is not granted. As a result, the Court finds injunctive relief to be appropriate in this case, and hereby enjoins Defendants from further infringing Plaintiffs' copyrights. This injunction shall be permanent, or shall last "until such time as [D]efendant[s] obtain a license" to perform Plaintiffs' copyrighted material. *Int'l Korwin*, 665 F.Supp. 652, 658.

#### (ii) Statutory Damages

■ A plaintiff alleging copyright infringement may elect either actual or statutory damages under 17 U.S.C. § 504. *Hickory Grove*, 749 F.Supp. at 1039. Section 504(c)(1) provides that where statutory damages are elected, the trial court may, in

its discretion, award damages of between $250 and $10,000 for each copyright infringed. "District courts have wide discretion in determining the amount of statutory damages to be awarded, 'constrained only by the specified maxima and minima.'" *Id.* (quoting *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir.1984)). *See also, Int'l Korwin*, 855 F.2d at 383; *Morley Music Co. v. Dick Stacey's Plaza Motel, Inc.*, 725 F.2d 1 (1st Cir.1983); *Fermata*, 712 F.Supp. at 1263; *Sailor Music*, 640 F.Supp. at 635.

Plaintiffs present in the Hartman affidavit evidence that, if properly licensed by ASCAP to date, Defendant and a related corporate entity[3] would owe ASCAP license fees of approximately $2,370.59. Moreover, Plaintiffs contend that they have incurred out-of-pocket expenses of some $409.24 in obtaining evidence of Defendant's infringement. Altogether, Plaintiffs request statutory damages in the amount of $1,500.00 per infringement, for a total of $7,500.00.

It has long been the courts' sentiment that "defendants who violate the copyright laws 'must be put on notice that it costs less to obey the copyrights laws than to violate them.'" *Hickory Grove*, 749 F.Supp. at 1040 (quoting *Int'l Korwin*, 855 F.2d at 383). Accordingly, and in light of evidence presented indicating the intentional nature of Defendants' infringement, the Court finds the amount of statutory damages requested by Plaintiffs to be reasonable. Furthermore, they fall squarely within those allowed pursuant to § 504. Thus, the Court finds that Plaintiffs are entitled to statutory damages of $1,500.00 per infringement, for a total of $7,500.00.

#### (iii) Costs and Attorney's Fees

Plaintiffs further request reimbursement for costs incurred in the bringing of this lawsuit, including reasonable attorney's fees. 17 U.S.C. § 505 provides that in actions brought pursuant to the Copyright Act, "the court in its discretion may allow the recovery of full costs ... [and] the

---

**3.** Plaintiffs allege that Defendant Downside Lenox, Inc. operates other establishments in addition to the Bucket Shop, which establishments should also be licensed so as to avoid copyright infringement.

**1230**

court may also award a reasonable attorney's fee to the prevailing party as part of the costs." It is noteworthy that the statute does not condition an award of costs and fees on the showing of a willful infringement or frivolous suit. In fact, it has been held that

> [w]hile the defendant's good faith and the complexity of the legal issues involved likely would justify *a denial* of fees to a successful plaintiff, a showing of bad faith or frivolity is not a requirement of *a grant* of fees. Rather, the only preconditions to an award of fees is that the party receiving the fee be the "prevailing party" and that the fee be reasonable.

*Original Appalachian Artworks, Inc. v. Toy Loft*, 684 F.2d 821, 832 (11th Cir.1982).

Plaintiffs allege that they have incurred costs totalling $185.00 ($120.00 filing fee + $65.00 service fees), and attorney's fees in the amount of $2,751.00. Thus, Plaintiff claims costs and attorney's fees to date totalling $2,936.00. *See* Affidavit of Joyce B. Klemmer, attached as Exhibit C to Plaintiffs' Motion for Summary Judgment, p. 3, ¶ 6. The Court sees no reason why it should not consider these costs and attorney's fees reasonable, and indeed Defendants contest neither their reasonableness nor their imposition. Thus, especially in light of this Court's finding that Defendants intentionally infringed Plaintiffs' copyrights, the Court grants Plaintiffs' request for costs and attorney's fees of $2,936.00.

## CONCLUSION

The Court GRANTS Plaintiffs' Motion for Summary Judgment.

So ORDERED.