**BLUE SEAS MUSIC, INC.; Jac Music Co., Inc.; Jobete Music Co., Inc.; and Ric Ocasek**

v.

**FITNESS SURVEYS, INC. and John Quattrocchi.**

Civ. No. 1:92–cv–2255–ODE.

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 19, 1993.

Joyce B. Klemmer, Smith, Gambrell & Russell, Atlanta, GA, for plaintiffs.

John Quattrocchi, Fitness Surveys Inc., Norcross, GA, for defendants.

### ORDER

ORINDA D. EVANS, District Judge.

This civil action is before the court on Plaintiffs' motion for summary judgment. No opposition has been filed by Defendants.

### PROCEDURAL BACKGROUND

The complaint in this action was filed on September 23, 1992. It alleges that Defendants are liable for intentional copyright infringement for unauthorized public performance of certain copyrighted songs. The alleged public performance occurred at Defendants' fitness facility, known as "Workout America," located in Riverdale, Georgia. Plaintiffs seek injunctive relief to prevent future infringement, statutory damages, and costs, including attorney's fees.

Defendant Quattrocchi filed an answer on January 27, 1993, on behalf of himself and

Fitness Surveys. In an order entered March 17, 1993, the court granted Plaintiffs' motion to strike Fitness Surveys' answer, because a corporation may not proceed *pro se* in federal court. The court allowed Fitness Surveys an additional twenty days to secure counsel and file an answer; however, five months have passed and Fitness Surveys has still never filed an appropriate answer.

In a subsequent order, entered April 28, 1993, the court addressed Plaintiffs' motion to strike the request for a jury trial contained in Quattrocchi's answer. The motion was granted as unopposed, in light of Quattrocchi's failure to file a response.

On March 4, 1993, Plaintiffs served a request for admissions on Defendants, pursuant to Fed.R.Civ.P. 36. Plaintiffs assert that Defendants have not responded to this request, and Defendants have offered no objection to that assertion. As a result of the failure to respond, each of the facts stated in the Request for Admissions is deemed admitted, and is therefore "conclusively established." Fed.R.Civ.P. 36(a), (b).

Plaintiffs have now moved for summary judgment on all claims. Defendants have filed no response, despite the provisions of Local Rule 220-1(b)(1) (a motion to which no response is filed shall be deemed unopposed) and the notice sent by the Clerk (stating that a motion for summary judgment had been filed and a response was essential). The Eleventh Circuit has stated that a district court should not use Local Rule 220-1(b)(1) simply to sanction a party for failure to respond to a summary judgment motion. *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629 (11th Cir.1988). However, if the motion is supported by evidentiary materials, and the court is satisfied that the evidence presented would require a verdict in favor of the moving party, the court may grant the motion. *Id.* at 632; *Simon v. Kroger Co.*, 743 F.2d 1544, 1546–47 (11th Cir.1984).

### FACTS

Defendant John Quattrocchi is the Chief Executive Officer and Chief Financial Officer of Workout America in Riverdale, Georgia. (Plaintiffs' First Request for Admissions [hereinafter "Admissions"], ¶ 3). On June 20, 1992, and continuing to the present, Quattrocchi was and is responsible for the management and operation of Workout America, including the determination of the facility's music policy. (Admissions ¶ 4). There is a $5.00 admission charge to use the Workout America facilities. (Admissions ¶ 7). Workout America has at least thirteen ceiling mounted stereo speakers, as well as other floor box speakers. (Admissions ¶ 8, 9). On June 20, 1992, the following musical compositions were played over the radio speakers at Workout America for the entertainment of patrons: "What the World Needs Now is Love"; "I'll Be There"; and "Shake it Up." (Admissions ¶ 11, 12, 13). Plaintiffs are the owners of valid copyrights in these compositions. (Admissions ¶ 1).

Plaintiffs are members of the American Society of Composers, Authors and Publishers (ASCAP). ASCAP is an unincorporated association of more than 55,000 writers and publishers of musical compositions. ASCAP members grant to ASCAP a non-exclusive license to authorize public performances of members' musical compositions. Because of the impossibility of each copyright owner attempting to prevent infringement of his copyrights throughout the nation, ASCAP performs a monitoring function to be sure that unlicensed businesses and individuals do not infringe the copyrights of any ASCAP members. (*See* Affidavit of Bonnie King, ¶¶ 2–4).

The evidence presented by Plaintiffs indicates that ASCAP repeatedly warned Mr. Quattrocchi and Fitness Surveys of the necessity of obtaining an ASCAP license in order to legally broadcast copyrighted compositions within the Workout America facility. In fact, it appears that ASCAP sent at least *twenty-six* letters to Workout America and/or Mr. Quattrocchi between March 28, 1989, and May 21, 1992. (*See* Exhibit A to King Aff.). These letters urged Defendants to obtain licenses from ASCAP or to cease playing copyrighted music over their stereo system.

### ANALYSIS

**A. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only "if the pleadings, depositions, answers to inter-

rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [Plaintiff] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on Plaintiffs' motion, the court must view the evidence in a light most favorable to Defendants. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). To prevail in their motion for summary judgment, Plaintiffs must show that the evidence is sufficient to establish every essential element of their case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If Plaintiffs make a sufficient showing, then Defendants "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). If reasonable minds could differ as to the import of the evidence, and a reasonable interpretation of the evidence could lead to a Defendants' verdict, then summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

## B. LIABILITY FOR INFRINGEMENT

■ The Copyright Act of 1976 grants exclusive rights to public performance of a copyrighted musical composition to the owner of the copyright. 17 U.S.C. § 106(4). It is undisputed that Plaintiffs are valid owners of the copyrights in the songs at issue. It is also clear that "public performance" of a musical composition encompasses playing recordings of the compositions over a stereo system in a business establishment for the entertainment of customers. *Broadcast Music, Inc. v. Claire's Boutiques, Inc.*, 949 F.2d 1482 (7th Cir.1991); *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77 (5th Cir.1987). Here, it is undisputed that Defendants played copyrighted songs over a stereo system for the entertainment of paying customers, and that Defendants never secured a license for the use of the copyrighted material.

■ In his answer, Defendant Quattrocchi appears to raise a defense under 17 U.S.C. § 110(5). That section exempts certain public performances, where:

> communication of a transmission embodying a performance or display of a work by the public reception of the transmission on a single receiving apparatus of a kind commonly used in private homes, unless—
>
> (A) a direct charge is made to see or hear the transmission; or
>
> (B) the transmission thus received is further transmitted to the public.

17 U.S.C. § 110(5). From the evidence presented to the court, it appears that Defendants cannot benefit from this "home system defense." First, there is a direct charge to enter the workout area at Workout America. Second, the system utilized by Defendants is not a small "home-type" sound system; it includes 13 recessed ceiling speakers and several floor speakers. *See U.S. Songs, Inc. v. Downside Lenox, Inc.*, 771 F.Supp. 1220 (N.D.Ga.1991); *Hickory Grove Music v. Andrews*, 749 F.Supp. 1031 (D.Mont.1990); *Merrill v. Bill Miller's Bar–B–Q Enterprises, Inc.*, 688 F.Supp. 1172, 1175 (W.D.Tex. 1988). Finally, the system does "further transmit" the copyrighted works throughout the facility. *See Downside Lenox, supra.*

As a result, the evidence conclusively establishes that Defendants have committed an infringement of Plaintiffs' valid copyrights. The only remaining analysis pertains to the appropriate remedies.

## C. INJUNCTIVE RELIEF

District courts are specifically granted the authority in copyright cases to issue injunctions in order to restrain further infringement. 17 U.S.C. § 502(a). In this case, it appears that Plaintiffs are entitled to an injunction against further infringement of their copyrights or the copyrights of other ASCAP members.

As a result, Defendants are hereby ORDERED to cease infringement of the copyrighted works owned by Plaintiffs or any other member of ASCAP.

## D. STATUTORY DAMAGES

 Plaintiffs also seek statutory damages pursuant to 17 U.S.C. § 504(c). That subsection provides that the owner of a copyright may elect statutory damages in lieu of proving actual damages. Statutory damages are awardable "in a sum of not less than $500 or more than $20,000 as the court considers just" for each work infringed. 17 U.S.C. § 504(c)(1). Furthermore, if the court finds that the infringement was willful, the court in its discretion may increase the statutory damages to not more than $100,000 per work infringed. § 504(c)(2). A district court has extremely broad discretion in setting the amount of statutory damages. *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 852 (11th Cir.1990). Furthermore, this great discretion:

> does not entitle defendants to a jury or bench trial as to an award of damages within the statutory limits ..., provided that the parties may submit all of their supporting evidence to the district court.

*Id.* at 853. Accordingly, this court can set the amount of statutory damages on the pending motion for summary judgment, as both parties have been given an *opportunity* to submit evidence.

When determining statutory damages, "the district court should consider both the willfulness of the defendant's conduct and the deterrent value of the sanction imposed." *Id.* at 852. The evidence presented to this court indicates flagrant disregard for the requirements of the Copyright Act and for the rights possessed by Plaintiffs as owners of copyrighted musical compositions. ASCAP was exceedingly patient in attempting to get Defendants to purchase licenses for the copyrighted works of ASCAP members; ASCAP sent twenty-six letters over a period of three years prior to resorting to litigation.

The affidavit of Bonnie King indicates that Defendants would have paid $483 per year in license fees for the Riverdale facility. Thus, for the past four years Defendant would have paid roughly $1,900 had they complied with ASCAP's licensing requests.[1]

The Eleventh Circuit has stressed deterrence as an important goal of statutory damages. If the court were to award only the amount of the license fee as statutory damages, Defendants would succeed in flouting the copyright laws with no net loss. As a result, the court finds it appropriate to award statutory damages of $2,500 per incident of documented infringement, or a total of $7,500. This amount should help to deter Defendants and others from willfully violating the statutory requirements of the Copyright Act.

## E. COSTS

The Copyright Act also provides that the court, in its discretion, may allow the recovery of costs, including reasonable attorney's fees. 17 U.S.C. § 505. Plaintiffs have submitted a detailed affidavit addressing each of the factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). The affidavit indicates a total requested legal fee to date of $3,989.50.[2] In addition, the affidavit states that costs of $254.25 have been incurred. The court agrees that the hourly rates[3] are within the range of reasonable charges of other Atlanta area attorneys for this type of work.

As a result, the court will award $4,243.75 in fees and costs to Plaintiffs.

## CONCLUSION

Plaintiffs' motion for summary judgment [# 10–1] is GRANTED. The Clerk is DIRECTED to enter judgment in favor of Plaintiffs and against Defendants, jointly and severally, in the amount of $7,500.00, plus attorneys' fees and costs in the amount of $4,243.75. Defendants are hereby EN-

---

1. The court also notes that Defendants own three other workout facilities, which have also apparently been playing copyrighted musical works without an ASCAP license. However, the complaint and the admitted facts relate only to the Riverdale facility.

2. Plaintiffs also seek $1,000 for future legal fees associated with collection of the judgment. The court does not find this category of fees to be appropriate prior to entry of judgment.

3. $185.00 per hour for the lead counsel; $105.00 per hour for an associate; $70.00 per hour for a paralegal.

JOINED from further infringing the copyrights owned by Plaintiffs or any other member of ASCAP.

SO ORDERED.