**BROADCAST MUSIC, INC.,**
**et al., Plaintiffs,**

**v.**

**GEORGIA RIB COMPANY,**
**INC., et al., Defendants.**

**CIVIL ACTION FILE NUMBER**
**1:13-cv-1299-TCB**

United States District Court,
N.D. Georgia, Atlanta Division.

Signed May 21, 2014

James J. Gibson, Ryan T. Pumpian, Bryan Cave, LLP, Atlanta, GA, for Plaintiffs.

Alison Reich Spiers, Alison Reich Speirs, LLC, Atlanta, GA, Alexander Joseph Repasky, Law Office of Alexander J. Repasky, Marietta, GA, for Defendants.

## ORDER

Timothy C. Batten, Sr., United States District Judge

This copyright-infringement case comes before the Court on Plaintiffs' motion for summary judgment [23].

### I. Background

Plaintiff Broadcast Music, Inc. is a performing rights society that sells licenses to publicly play musical compositions on behalf of the copyright owners, including Plaintiffs Stone Diamond Music Corp., Paul Simon Music, and Night Garden Music. To that end, BMI sells the licenses to third parties so that they can lawfully perform copyrighted songs in public.

Defendant Georgia Rib Company[1] is a barbecue restaurant in Marietta, Georgia, and Defendant Parviz Abedi is an officer and the sole shareholder of GRC. BMI contends that on December 21, 2012, Defendants publicly played five copyrighted musical compositions without authorization.

On April 19, 2013, Plaintiffs filed this copyright-infringement action in which they seek injunctive relief pursuant to 17 U.S.C. § 502, statutory damages pursuant to § 504, and reasonable attorney's fees pursuant to § 505. On March 21, 2014, Plaintiffs filed a motion for summary judgment.

### II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any

---

1. Plaintiffs named "Georgia Rib Company, Inc." as the Defendant. However, the correct name is Georgia Rib Company.

material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir.2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In making this determination, however, "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.* Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party would have the burden of proof at trial, that party "must show *affirmatively* the absence of a genuine issue of material fact: it 'must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.'" *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir.1991) (quoting *Celotex*, 477 U.S. at 331, 106 S.Ct. 2548). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Celotex*, 477 U.S. at 331, 106 S.Ct. 2548).

## III. Discussion

### A. Copyright Infringement

■ Under 17 U.S.C. § 106(4), the owner of a copyright has the exclusive right to publicly perform or to authorize the public performance of a copyrighted work To prevail on a claim for copyright infringement under this section, Plaintiffs must prove (1) ownership of a valid copyright in the songs, and (2) public performance of the songs by Defendants (3) without authorization from Plaintiffs. *Blue Seas Music, Inc. v. Fitness Surveys, Inc.*, 831 F.Supp. 863, 865 (N.D.Ga.1993). It is undisputed that Plaintiffs are the valid owners of the copyrighted songs played at GRC on the night in question. There is also no evidence to support Defendants' contention that they had authorization to publicly perform the copyrighted works; the record clearly shows that they did not have a license from BMI or other authorization from Plaintiffs to publicly perform the songs. Thus, the issue is whether the songs were in fact publicly performed by Defendants.

To perform or display a work "publicly" means "(1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered." 17 U.S.C. § 101. It also means "(2) to transmit a performance ... of the work to a place specified by clause (1) or to the public, by means of any device or process ...." *Id.*

On December 21, 2012, BMI sent an investigator to GRC to determine whether Defendants were publicly performing copyrighted songs. The investigator recorded five copyrighted songs being played in the restaurant via CDs. Afterwards, BMI employees verified that the songs were protected works. Plaintiffs contend that this satisfies the public-performance requirement. Thus, they assert that GRC is liable for the infringing acts, and that Abedi, who has direct control over GRC, should be treated as a joint torfeasor.

Defendants respond that the songs were not performed at GRC on the night in question because the restaurant does not have a system capable of playing CDs. But this contention is contradicted by Abedi's affidavit, in which he testifies that he allowed a friend, who is also a musician, to host a charity/CD release party in a back room of the restaurant, and that his friend provided his own sound system for the party. Abedi testifies that if the songs were played, they were played quietly "in the background" and that they were played "exclusively for the private party." He also testifies that the room was "used exclusively for the charity and CD release party and did not otherwise have any effect on" GRC's business that evening. Abedi further testifies that during his "personal investigation" he could not find anyone who recalled hearing the songs.

■ Abedi's testimony does not create a genuine dispute of material fact on the public-performance issue. The investigator's report and recordings conclusively show that the songs were publicly played at GRC and loudly enough to be recorded. Abedi's testimony that the music was played in the background of and exclusively for a private party in a back room, even if true, fails to show that GRC was not a "place open to the public" on the night in question. 17 U.S.C. § 101. His testimony about the private party also fails to show that the party and other restaurant patrons did not consist of a "substantial number of persons outside of a normal circle of a family and its social acquaintances." *Id.*

In addition, Abedi admits that the party provided a sound system. So his testimony that GRC did not have the ability to play CDs fails to show that Defendants could not have transmitted the copyrighted songs "by means of any device or process." *Id.* His admission also contradicts Defendants' speculation that the music may have been played on some other customer's iPod. Thus, unless Defendants have some other defense, they are liable for copyright infringement. *See E Beats Music v. Andrews,* 433 F.Supp.2d 1322, 1326 (M.D.Ga. 2006) ("[I]t is well settled that investigators' affidavits that are uncontradicted are conclusive proof of performance .... Defendants produced no evidence contrary to the investigators' affidavits. Plaintiffs therefore conclusively proved the performance factor."); *Broadcast Music, Inc. v. McDade & Sons, Inc.,* 928 F.Supp.2d 1120, 1127–28 (D.Ariz.2013) ("The BMI investigator's certified infringement report, and the audio recording documenting the musical compositions from the BMI repertoire that were played at Norton's on June 10 and 11, 2011, establish the public performance of those copyrighted works."); *Blue Seas,* 831 F.Supp. at 865 (gym and CEO/CFO liable for copyright infringement where protected songs were played in gym for paying customers without authorization and defendants lacked any defense).

Defendants argue that neither Abedi nor GRC employees played the songs or knew that the songs were played, so they cannot be liable for copyright infringement. They try to insulate themselves from liability by arguing that the private party controlled what music it played, which absolves Defendants of liability. This argument is unavailing. Plaintiffs have provided evidence that the party was in fact not private; Defendants advertised and invited the general public to the party on GRC's Facebook page, and Plaintiffs' investigator was present when and where the music was performed.

■ Thus, the evidence clearly shows that the copyrighted songs were played at GRC, which makes GRC liable for copyright infringement, and Abedi is jointly and severally liable therewith. "The test for finding a corporate officer jointly and severally liable with his corporation for

copyright infringement is whether the officer has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *E Beats*, 433 F.Supp.2d at 1326 (internal quotation marks omitted). Abedi's affidavit establishes his right and ability to supervise and direct financial interest in the infringing activity. He is an officer and the sole shareholder of GRC, which vests him with supervisory authority, and he testified that he allowed the friend to host the party. Indeed, Defendants admitted in response to Plaintiffs' requests for admission that Abedi is the owner and operator of GRC and performs general restaurant management activities.[2] Defendants also admitted that Abedi, as the owner, has a direct financial interest in GRC. Consequently, Abedi is jointly and severally liable for copyright infringement with GRC. *See id.* (owner and individual who was actively involved in business jointly and severally liable because they had ultimate authority over activities at and direct financial interest in club). The Court now evaluates what relief Plaintiffs are entitled to.

### B. Injunctive Relief

Plaintiffs ask the Court to award them a final injunction that prohibits Defendants from playing their copyrighted songs. Plaintiffs have provided evidence that since late 2010 BMI has repeatedly informed Defendants through numerous letters and phone calls of the need for a license to play copyrighted songs. Thus, Plaintiffs argue that a final injunction enjoining further acts of infringement is necessary to adequately protect their rights.

Under 17 U.S.C. § 502, the Court may grant a final injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright," and

Plaintiffs have proposed reasonable terms. Moreover, Defendants have not argued that the imposition of a final injunction is inappropriate. *See also Milene Music v. Gotauco*, 551 F.Supp. 1288, 1295–96 (D.R.I.1982) (entering final injunction even though defendants were paying for a music license by the time the court ruled on plaintiffs' motion for summary judgment). Accordingly, the Court will issue a final injunction.

### C. Statutory Damages

Pursuant to 17 U.S.C. § 504(c)(1), the Court may award "statutory damages for all infringements involved in the action, with respect to any one work ... for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just." Plaintiffs request an award of $8,000 per song, which equals $40,000 in statutory damages.

In determining a just award of statutory damages, the Court may make adjustments based on whether Defendants' infringement was willful or innocent. *Id.*(c)(2). Based on BMI's numerous letters and phone conversations with Abedi about the need for a license, Plaintiffs contend that Defendants' infringement was willful, which justifies their requested damages. They are correct; the letters and phone calls and Defendants' failure to purchase a license are sufficient to show willfulness. *See M.L.E. Music Sony/ATV Tunes, LLC v. Julie Ann's, Inc.*, No. 8:06–cv–1902–T–17–EAJ, 2008 WL 2358979, at *5 (M.D.Fla. June 9, 2008) ("It is undisputed that Defendants willfully committed a violation of the Copyright Act since ASCAP repeatedly notified and warned Defendants that publicly performing copyrighted

---

**2.** This admission negates Abedi's self-serving testimony in his affidavit that he does "nothing in the facility of a personal capacity but

function[s] purely as an officer of the company ...."

works without a license constituted copyright infringement.").

Defendants have not responded to Plaintiffs' request for statutory damages. Although they argue that Plaintiffs are not entitled to any statutory damages because they did not publicly perform the copyrighted songs, they do not argue against Plaintiffs' requested amount of statutory damages. Nor do Defendants argue that they are innocent, which would entitle them to a reduction in damages. At the end of their opposition brief, Defendants briefly state that if the Court finds in favor of Plaintiffs, they should be allowed to file an application for the determination of a reasonable license rate pursuant to 17 U.S.C. § 513. But they have not shown that the statute applies to them; that it is appropriate to seek such relief in this action; or that the application impacts or negates Plaintiffs' requested relief.

■ In light of the record, the Court finds that $8,000 per song, which is well within the statutory range, is a just award. According to an August 26, 2011 letter from BMI to Defendants, the annual licensing fee was $8,160.80. By refusing to purchase this license from the date of the first letter (December 10, 2010) to the present, Defendants have avoided paying licensing fees for three and a half years, which saved them almost $29,000. And as Plaintiffs point out in their brief, courts have consistently held that a statutory-damages award three times the unpaid licensing fees is appropriate. *See id.* at *5 (factors to consider when awarding statutory damages are expenses saved and profits reaped by defendants, revenue lost by plaintiffs, and defendants' state of mind). Here, the total amount in statutory damages is well below three times the unpaid licensing fee. In addition, the amount accurately takes into account Plaintiffs' lost revenue, Defendants' expenses saved, and Defendants' willful state

of mind in infringing Plaintiffs' protected songs. Accordingly, the Court will award Plaintiffs $40,000 in statutory damages.

### D. Attorney's Fees

Under 17 U.S.C. § 505, the Court "may allow the recovery of full costs by" Plaintiffs, the prevailing parties, including a "reasonable attorney's fee." Plaintiffs seek $7,655 in fees for prosecuting this case. Again, Defendants have not challenged the reasonableness of the requested amount.

■ "The factors to consider in calculating attorneys fees include the frivolousness of the suit, motivation of the litigants, objective unreasonableness in the factual and legal components of the case, and the need to advance compensation and deterrence." *Id.* at *6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)) Here, Plaintiffs' suit is not frivolous; the factual and legal components were not objectively unreasonable; and there is a need to advance compensation and deterrence in light of Defendants' willful infringement despite dozens of letters and phone calls. Moreover, the Court has reviewed Plaintiffs' counsel's invoices and finds them reasonable. As such the Court will award Plaintiffs $7,655 in attorney's fees.

### IV. Conclusion

Plaintiffs' motion for summary judgment [23] is GRANTED. The Court ORDERS Defendants to cease infringement of any of the copyrighted songs owned by Plaintiffs or licensed by BMI. The Court also AWARDS Plaintiffs $40,000 in statutory damages and $7,655 in attorney's fees.

IT IS SO ORDERED this 21st day of May, 2014.